[No. 6820-0-III. Division Three. February 13, 1986.]

RICHARD VIGIL, ET AL, *Appellants,* v. SPOKANE COUNTY, ET AL, *Defendants,* W. R. KEIMIG, *Respondent.*

*Brian C. Balch* and *Powell & Morris,* for appellants.

*Harold J. Triesch,* for respondent.

McINTURFF, J.—Richard and Jeaneene Vigil appeal a summary judgment which dismissed their cause of action against William Keimig for breach of the implied warranty of habitability on statute of limitation grounds. We reverse.

In late 1975, the Vigils purchased a new home from its builder, Mr. Keimig. In early 1976, a small amount of clear, odorless water backed up in a drain in the basement. Mr. Vigil called Mr. Keimig, who came to the house with a backhoe operator, dug a hole in the yard, and filled it with gravel. While Mrs. Vigil observed this activity from a window in the house, she did not make a specific inquiry as to what they were doing, nor did Mr. Keimig give an explanation to her or Mr. Vigil. For one day in early 1977, a small amount of clear water again puddled around the Vigils' basement drain. The Vigils took no action as the problem disappeared within a short time.

Then in early 1979, raw sewage backed through the basement drain. A friend of the Vigils who was a plumber advised them they had a faulty drain field. Mr. Vigil then examined health district records and learned that when Mr. Keimig had applied for a permit to install a septic tank during his construction of the house, the district had conditioned final approval on the county engineer's checking a surface drainage problem. Handwritten comments on the application indicated:

> Final permit not to be signed until an adequate dike area built to divert run off water on north side of Glenrose [the site of the construction] & east side of Havana.
>
> Sewage permit release subject to confirmation from Co. Engineers['] office that barrel pit ditch area on south side of Glenrose will properly deliver surface run off water without overflowing across road into Glennair 9 development.

The Vigils attest that until their investigation in 1979, they assumed they were connected to the city sewer system; that 1979 was the first time the existence of a septic tank came to their attention.

The Vigils next attempted to work with county officials to correct the problem. On November 1, 1979, the Spokane County engineer wrote Mr. Vigil, stating if he would widen and deepen the ditch on his property north of Glenrose Road so water could drain toward a culvert, the County would do necessary work on the roadway ditch on the south side of Glenrose to insure surface water drainage along Glenrose to the east. The work was done, but with no positive result. Mr. Vigil advised the County that it was his opinion that the action was taken too late; his backyard was already inundated with water.

In November 1980, Mr. Vigil installed a new drain field. That drain field has also failed, and at the time of Mr. Vigil's deposition in 1983, he still had raw sewage backing into his basement. In October 1981, the Vigils filed this action against Spokane County, Spokane County Health District, and Mr. Keimig. They alleged damages resulting from (1) the County's improper maintenance of the drainage ditch along Glenrose Road, (2) the Health District's approval of a sewage disposal permit for what the Vigils contend was a site unsuitable for such a system, and its failure to require fulfillment of the permit conditions, and (3) Mr. Keimig's breach of the implied warranty of habitability by constructing the home on an unsuitable location and by failing to fulfill the permit conditions.

In May 1983, the Superior Court granted (1) the Health District's motion for summary judgment and (2) a partial

summary judgment in favor of the County. The Vigils settled their remaining claim against the County in September 1983. In September 1984, the court granted Mr. Keimig's motion for summary judgment on statute of limitation grounds. The court, in its oral decision, stated:

It is argued that [the plaintiffs] . . . didn't discover all of the elements of their cause of action until the spring of 1979, when there was a heavy runoff and all of the water came in more torrentially than before. . . .

It seems to me that this action is stale . . . [W]ith the attorneys conceding that . . . the three–year statute of limitations applies, it seems clear to me, without dispute, that the plaintiffs had full knowledge of this problem when it arose in 1976 . . .

The Vigils appeal the dismissal of Mr. Keimig.

First, we note Mr. Keimig's argument, offered for the first time on appeal, that we should apply the 2–year catchall statute of limitation, RCW 4.16.130, rather than the 3–year statute for injuries to the "person or rights of another", RCW 4.16.080(2). The Superior Court applied the 3–year statute, stating the parties "conceded" its applicability. In an analogous situation, the court has held that an erroneous instruction to which the parties do not except becomes the law of the case. *Garcia v. Brulotte,* 94 Wn.2d 794, 797, 620 P.2d 99 (1980); *Horwath v. Washington Water Power Co.,* 68 Wn.2d 835, 845, 416 P.2d 92, 420 P.2d 216 (1966). Similarly, the application of RCW 4.16.080(2), the 3–year statute, not objected to in Superior Court, becomes the law of these parties' case.

Moreover, "[t]he language of RCW 4.16.080(2) is clear and should apply to any other injury to the person or rights of another not enumerated in other limitation sections." *Stenberg v. Pacific Power & Light Co.,* 104 Wn.2d 710, 720, 709 P.2d 793 (1985). A breach of the warranty of habitability alleges a breach of the builder–seller's duty to supply a structure adequate for use by the buyer for the purposes for which the house and lot had been sold. *Donovan v. Pruitt,* 36 Wn. App. 324, 328, 674 P.2d 204 (1983). Conversely, the buyer has a right to such a structure, and

any injury to this right is covered by RCW 4.16.080(2).

We now turn to the substance of the Vigils' appeal. As referenced above, the Superior Court was of the opinion that in 1976 the Vigils had full knowledge of the conditions which constituted the alleged breach, *i.e.*, the faulty drain field on an unsuitable site. The undisputed facts are that in 1976 the Vigils had a small amount of odorless water around their basement drain, and that Mr. Vigil called Mr. Keimig, who solved the immediate problem by digging a hole in the yard and filling it with gravel. The Vigils claim they did not realize their home was connected to a septic tank instead of a city sewer until 1979. Are the foregoing facts sufficient for the court to say as a matter of law that the Vigils knew or should have known in 1976 they had a cause of action against Mr. Keimig for breach of the implied warranty of habitability? We answer "no".

The discovery rule postpones the accrual of a cause of action until such time as the plaintiff, in the exercise of reasonable diligence, has the means to discover the existence of the cause of action. *U.S. Oil & Ref. Co. v. Department of Ecology,* 96 Wn.2d 85, 92, 633 P.2d 1329 (1981); *Kittinger v. Boeing Co.,* 21 Wn. App. 484, 488, 585 P.2d 812 (1978). One who has notice of facts sufficient to prompt a person of average prudence to inquire is deemed to have notice of all facts which reasonable inquiry would disclose. *Enterprise Timber, Inc. v. Washington Title Ins. Co.,* 76 Wn.2d 479, 457 P.2d 600 (1969). When an aggrieved party discovered or could have discovered the facts to support a cause of action is a question of fact. *Cf. Sherbeck v. Estate of Lyman,* 15 Wn. App. 866, 869, 552 P.2d 1076 (1976) (it is a question of fact as to when plaintiff, in exercise of diligence, could have discovered a fraud).

To prove a cause of action for breach of the implied warranty of habitability, a plaintiff must show he was the first purchaser–occupant of the dwelling, he bought it from the builder, and the alleged defect rendered the dwelling unfit for occupancy. *Klos v. Gockel,* 87 Wn.2d 567, 569–70, 554 P.2d 1349 (1976). The Vigils contend they were not aware

in 1976 that the problem with the drain would render their home unfit for occupancy. Mr. Keimig himself testified in his deposition that he had no reason to believe the on-site disposal system he installed on the Vigil property would not operate properly. At a minimum, the facts here present a material issue as to whether reasonable diligence required the Vigils in 1976 to inquire further and determine whether their entire sewage disposal system would ultimately fail.

The judgment of the Superior Court is reversed; the cause is remanded for trial.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied March 20, 1986.