**MINE SAFETY APPLIANCES CO.,**
Petitioner–Cross Respondent,

v.

**David M. STILES,**
Respondent–Cross Petitioner.

Nos. S–2076, S–2101.

Supreme Court of Alaska.

May 20, 1988.

---

David H. Thorsness, R. Craig Hesser, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for petitioner-cross respondent.

Donna C. Willard, Willoughby & Willard, Murphy L. Clark and Michael W. Flanigan, Clark, Walther & Flanigan, Anchorage, for respondent-cross petitioner.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

David M. Stiles survived a traumatic injury while wearing a safety helmet. He made no attempt to investigate any role the helmet may have played in the accident within the two-year statute of limitations. Stiles discovered an alleged defect in the helmet six years after the accident. This petition arises from the denial of cross motions for summary judgment, the issue being whether the discovery rule doctrine applies to toll the running of the statute of limitations. We hold that the statute of limitations was not tolled.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 1978, Stiles, an employee of Parker Drilling Company (Parker), was seriously injured while working on a Cook Inlet drilling platform. Stiles was hit on the back of his head when a 58–pound metal hole cover fell 15 to 16 feet from the floor above. The blow caused a skull fracture resulting in Stiles being rushed by

helicopter to Providence Hospital in Anchorage.

At the time of the accident Stiles was wearing a polycarbonate plastic safety helmet manufactured by Mine Safety Appliances (MSA). Shortly after the accident Mike Balich, the safety officer for Parker, investigated the accident. He noted that the helmet sustained a one and one-half inch crack in the shell at the point of impact and that two of the plastic clips on the internal suspension system were broken. Following the investigation Balich took the helmet to his office where it remained until it was misplaced when Parker moved its office in 1980.

After being released from the hospital Stiles returned to Louisiana to recuperate. He intended to return to Alaska to work as soon as he recovered. In the meantime he filed a worker's compensation claim and retained counsel to compel the worker's compensation carrier to guarantee payment for certain medical treatments. At that time he made a conscious decision not to bring suit against anyone as a result of the accident because he did not want to jeopardize his chance of returning to work in the oil industry.

Stiles returned to work in Alaska briefly on two separate occasions. However, he had difficulty resuming his duties and returned to Louisiana. Since the accident Stiles has been constantly on medication, institutionalized on several occasions, and ultimately placed under guardianship. According to Stiles, because of his mental illness resulting from the accident, he has been unable to maintain any employment, no matter how fundamental.

Stiles filed the complaint in this action September 2, 1982, four years and four months after the accident. The first claim was against Atlantic Richfield Company (ARCO) for negligence in the design of the platform, in supervision of employees, and in hiring. The second claim was against MSA, as well as other known and unknown helmet manufacturers, for strict products liability and breach of warranty.[1] MSA answered that the suit was barred by the statute of limitations. A timely suit would have been filed in 1980. Stiles then argued that his mental incompetence should toll the statute of limitations.

The trial court scheduled a bifurcated trial for the fall of 1986. The first trial concerned only whether Stiles was incompetent within the meaning of AS 09.10.140 so as to toll the statute of limitations. If Stiles was found incompetent and the statute tolled, the second trial was to be held on the issue of liability.

Just before the first trial ARCO settled with Stiles for $2 million, thus leaving MSA as the sole defendant. The jury returned a verdict in favor of MSA establishing that Stiles was mentally competent shortly after the accident and that his competence lasted for a period greater than two years.

The jury verdict did not completely resolve the statute of limitations question. Three days before the competency trial Stiles requested that he be allowed to raise the "discovery rule" as an alternative defense to the statute of limitations. Stiles argued that the facts upon which his case against MSA was based were not the type which could have been discovered by an ordinary layperson. Therefore, he argues the statute did not start to run until 1985, after Stiles discovered facts necessary to base a strict products liability complaint against MSA.[2] The trial court denied this request, stating that "while it appears

---

1. Stiles filed a second amended complaint in January 1983 naming only MSA as the manufacturer of Stiles' helmet.

   The trial court dismissed the breach of warranty claim in March 1986, long before trial. Stiles' theory of strict liability was originally based on manufacturing and design defect and failure to warn. As the case progressed Stiles focused solely on the design defect theory. He argues that the helmet is defectively designed because it fails to protect from lateral blows.

2. In effect Stiles argues that his 1982 claim against MSA was premature because he did not have a basis to support the allegations until 1985. Although not argued on appeal we observe that if Stiles' 1982 claim against MSA was not "to the best of [Stiles' counsel's] knowledge, information, and belief ... well grounded in fact and [ ] warranted by existing law ..." then Stiles and his counsel would be subject to appropriate sanctions. Alaska R.Civ.P. 11.

[Stiles] may have the basis for invoking the 'discovery rule' ... he waived that 'defense' ... by not raising it at any time in the proceedings which would have given reasonable notice...." Nevertheless, toward the end of the competency trial, the trial court modified its ruling and agreed to allow Stiles to argue the discovery rule theory in the trial which was to be held on the liability issues. Stiles then moved for summary judgment on the statute of limitations defense, based on the discovery rule. MSA responded by a cross-motion for summary judgment. Both motions were orally denied.

Both parties petitioned for review. We granted the petitions, recognizing that if MSA is correct on its interpretation of the discovery rule, the statute of limitations bars Stiles' suit and there will be no need for a liability trial. *See* Appellate Rule 402(b).

## II. DISCUSSION

When reviewing the grant or denial of a motion for summary judgment this court "must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts." *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985) (quoting *Brock v. Alaska Int'l Indus.,* 645 P.2d 188, 190 n. 6 (Alaska 1982). This court can look behind the trial court's findings to determine whether the judgment is supported by the record. *Moore v. State,* 553 P.2d 8, 17 n. 9 (Alaska 1976).

■ The statute of limitations governing Stiles' claim provides that the action must be brought within two years. AS 09.10.-070.[3] The statute of limitations ordinarily begins to run on the date on which the plaintiff incurs the injury. *Russell v. Municipality of Anchorage,* 743 P.2d 372, 375 (Alaska 1987) (quoting *Gudenau & Co. v.*

*Sweeney Ins.,* 736 P.2d 763, 766–67 (Alaska 1987)). However, this rule has been modified so that the statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action. *Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143, 144 (Alaska 1984). Thus we have said "the relevant inquiry is the date when [the claimant] reasonably should have known of the facts supporting her cause of action." *Russell,* 743 P.2d at 375. *See also Demoski v. New,* 737 P.2d 780, 788 (Alaska 1987); *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 464 (Alaska 1986). We look to the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights. *Sharrow v. Archer,* 658 P.2d 1331, 1334 (Alaska 1983).

Stiles argues that application of the discovery rule means the two-year period of limitations should not have begun to run until 1985, when he actually discovered evidence supporting his claim that his safety helmet was defectively designed and that those inadequacies exacerbated his injuries. MSA argues that application of the discovery rule in this case means that the statute should have begun to run on the day of the accident because at that time Stiles had enough information to give a reasonable person a suspicion that the safety helmet may have failed, thus giving rise to a duty to investigate.

■ A plaintiff does not have to understand the technical or scientific explanation for a defect before having knowledge sufficient to start the statute of limitations running. *See Sharrow,* 658 P.2d at 1334–35 (it was not a prerequisite for the running of the statute that the Sharrows be "informed of the 'wrong' by the 'wrongdoer' or [be] convinced that there was 'proof' of the wrong or [be] aware of 'sworn testimony

---

**3.** AS 09.10.070 provides:
   *Actions to be brought in two years.*
   No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and

not specifically provided otherwise; (2) upon a statute for a forfeiture of penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

and documentary evidence' substantiating it.") Nor does the plaintiff need to be able to technically prove the case the day the complaint is filed. *Cf. Shooshanian v. Wagner,* 672 P.2d 455 (Alaska 1983) (complaint should not be dismissed unless it appears beyond a doubt plaintiff can prove no set of facts in support of his claim). Although the details of the alleged deficiencies in the helmet are relevant to the question of whether the helmet is defective for purposes of strict products liability, they are in no sense essential. As we stated in *Patricia R. v. Sullivan,* 631 P.2d 91, 103 (Alaska 1981):

> The definition of a product defect is essentially functional. A product is defective if, for example, it has failed to perform as safely as an ordinary consumer would expect. The emphasis is on the failure of safe performance, rather than on the specific reasons for the failure.

(Citations omitted).

Ordinarily summary judgment is inappropriate on the issue of what date the statute should start running. *See Russell,* 743 P.2d at 375–76 & n. 11. However, if there are uncontroverted facts that determine when Stiles reasonably should have begun an inquiry to protect his rights, we can resolve the question as a matter of law. *Id.*

■ It is uncontroverted that Stiles knew he was hit in the head while wearing a safety helmet designed to protect against such blows. The helmet cracked and the suspension clips broke upon impact. Par-

ker investigated the accident and the result of that investigation was available to Stiles shortly after the accident. In addition, Parker's safety officer kept the helmet for two years where it was available for inspection. These facts were available to Stiles the day of the accident.[4] We conclude that under these circumstances a reasonable person would have notice of facts " 'sufficient to prompt a person of average prudence to inquire,' and thus [the person] should be deemed to have notice of all facts which reasonable inquiry would disclose." *Russell,* 743 P.2d at 376 (quoting *Vigil v. Spokane County,* 42 Wash.App. 796, 714 P.2d 692, 695 (1986)).

The simple fact is that although Stiles had knowledge of enough facts to prompt a reasonable person to investigate shortly after the accident, Stiles did nothing to investigate his claim within the two-year period.[5] We hold that the statute of limitations began to run as soon as Stiles regained his competency shortly after the accident. Therefore, Stiles' cause of action against MSA is barred by the statute of limitations.

■ Stiles argues that the doctrine of equitable estoppel should bar MSA from asserting the statute of limitations as a defense. We said in *Russell* that "[e]stablishment of estoppel generally requires the party seeking to assert it to show 'that the other party made some misrepresentation, or false statement, or acted fraudulently, and that he reasonably relied on such acts or representations ... and due to such reliance did not institute suit timely.' "

---

**4.** Stiles argues that the discovery rule is merited in this case because this case is analogous to technical products liability cases involving asbestos or DES where it is unreasonable to expect the ordinary plaintiff to initiate and conduct the massive research necessary to prove the causal link between the product and the injury. *See, e.g., White v. Johns–Manville Corp.,* 103 Wash.2d 344, 693 P.2d 687, 694 (1985); *Dawson v. Eli Lilly & Co.,* 543 F.Supp. 1330 (D.D.C.1982). Stiles' situation is distinguishable. Unlike asbestos caused diseases which take years to develop, thereby making it difficult to discern a causal link between the product and injury, a reasonable person injured in a traumatic accident where the head gear cracks and suspension clips break should suspect a causal connection immediately. Moreover, this

case is not one where the plaintiff has no idea what caused his injury until the defect is publicized through the mass media. *See, e.g., Anson v. American Motors Corp.,* 155 Ariz. 420, 747 P.2d 581 (App.1987).

**5.** The record clearly indicates that Stiles did not intend to file suit against anyone connected with the accident within the statutory period. Stiles hoped to recuperate and return to work in the Alaskan oil fields. Between 1978 and 1980 he was represented by an attorney in Louisiana who handled his worker's compensation problems. The thought of suing at least ARCO, and possibly Parker, apparently crossed Stiles' mind but his lawyer assured Stiles that he would not file suit and "mess [Stiles] up with [his] job."

*Russell,* 743 P.2d at 376 (quoting *Groseth v. Ness,* 421 P.2d 624, 632 n. 23 (Alaska 1966)). We have cautioned: "a plaintiff generally cannot invoke estoppel unless he has exercised due diligence in attempting to uncover the concealed facts." *Russell,* 743 P.2d at 376.

Stiles argues that MSA knew that its helmets did not provide adequate lateral protection and concealed that information from the public.[6] Stiles contends that because of MSA's alleged coverup of known defects in the helmets, Stiles was lulled into forgoing his rights. However, the record reflects that even if MSA did not publicize alleged defects in its helmets, MSA's conduct did not establish fraud. MSA put a warning on each helmet indicating the helmet is designed primarily to provide protection from objects striking the top.[7] Further, the controversy between the head protection industry and the government concerning helmet specifications, which Stiles relies on to show design defect, was well documented in trade journals and the Federal Register prior to 1978. There was enough readily available information to alert Stiles to a design problem had Stiles investigated the helmet's alleged design defects within two years after the accident. Stiles simply did not exercise due diligence by attempting to discover the facts. We therefore conclude the doctrine of equitable estoppel does not bar MSA from asserting the statute of limitations as a defense.

### III. CONCLUSION

The trial court's denial of Stiles' motion for summary judgment is AFFIRMED. The denial of MSA's cross-motion for summary judgment is REVERSED and the case REMANDED for entry of appropriate orders.

---

**6.** Both parties agree that the helmet was designed to meet standards adopted by the American National Standards Institute ("ANSI") in 1969. Stiles claims those standards focused on protection from impact to the top of the helmet. According to Stiles, MSA, in conjunction with a head safety trade group, conducted tests on lateral impacts in the late nineteen sixties and early nineteen seventies, yet chose not to suggest modifications to the ANSI standard. Subsequently, Stiles argues, the National Institute for Occupational Safety and Health ("NIOSH") publicly criticized the then existing standards. Stiles claims NIOSH tried to implement a new standard but the industry resisted changes. Stiles argues that the tests and the dispute were kept quiet. The record, however, supports MSA's claim that the dispute concerning the helmet's design was a matter of public debate.

**7.** Stiles was apparently hit on the front of his helmet which he was wearing backwards at the time.