Einar R. PEDERSEN, Appellant,

v.

Michael ZIELSKI, M.D.; Emergency Room, Inc.; Fairbanks Memorial Hospital; Lutheran Hospital and Home Society of America, Inc.; Michael J. Flannery, M.D.; William Kibbey, M.D.; Tony Diaz, M.D., Appellees.

No. S–3694.

Supreme Court of Alaska.

Dec. 6, 1991.

Rehearing Denied Jan. 27, 1992.

Michael W. Flanigan, Clark, Walther & Flanigan, Anchorage, for appellant.

R. Collin Middleton, Middleton, Timme & McKay, Anchorage, for appellees Zielski, M.D. and Emergency Room, Inc.

Howard A. Lazar, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellees Fairbanks Memorial Hosp. and Lutheran Hospitals and Homes Soc. of America, Inc. Sanford M. Gibbs, Hagans, Brown, Gibbs & Moran, Anchorage, for appellee Tony Diaz, M.D.

Marcus R. Clapp, David F. Leonard, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellees Flannery, M.D. and Kibbey, M.ᴅ.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, and COMPTON, JJ. [Moore, Justice, not participating.]

OPINION

MATTHEWS, Justice.

In this medical malpractice case the trial court granted summary judgment in favor of the defendants based on the statute of limitations.[1] We conclude that genuine issues of material fact exist as to when the cause of action accrued and whether defendant Michael J. Flannery, M.D., is estopped from relying on the statute of limitations. We therefore reverse.

FACTS[2]

On November 22, 1983, Einar Pedersen was injured in a two-car collision near Fairbanks. Pedersen's aorta was severed in the accident. He was brought to Fairbanks Memorial Hospital where immediate corrective surgery was performed by Drs. Michael J. Flannery and William Kibbey. The severed ends of the aorta were clamped for a total of forty-four minutes in order to stop the flow of blood during reattachment. After the operation, Pedersen's legs were permanently paralyzed.

Pedersen filed suit against Flannery, Kibbey, and the other appellees on November 8, 1988, claiming that his paralysis was caused by medical malpractice. Specifically, he claimed that clamping his aorta for forty-four minutes kept blood from flowing to his spinal cord for too long, causing paralysis. He alleges: "Reasonably competent and experienced Vascular/Thoracic Surgeons are aware of this potential hazard and avoid clamping the aortic heart vessels in such circumstance[s] to less than 30 minutes or use a shunt to provide blood flow around the clamped area during the operative procedures."

Following the operation Pedersen asked Dr. Flannery what had caused his paralysis. Dr. Flannery told him that "he wasn't sure but that [it] could have been caused by [the] spinal cord swelling due to a blow to the spine ... or because of lack of blood flow to the legs." Pedersen was transferred from Fairbanks Memorial Hospital to Providence Hospital in Anchorage in early December 1983. There he asked Dr. Emery what had caused his paralysis. Dr. Emery replied that "it was a combination of factors including blood loss from damaged aorta [and] swelling of the spinal cord." Neither Dr. Flannery nor Dr. Emery gave an indication that the operation had caused Pedersen's paralysis.

Pedersen's wife, Gloria, also discussed the cause of Pedersen's paralysis with Dr. Flannery. She states that Dr. Flannery

explained ... that the aorta was severed like a garden hose, and that he had to reattach the aorta, and that he had to work fast to accomplish this in 20 minutes, or damage to the spinal cord could occur. I took this to mean that he accomplished the operative procedures in twenty minutes. He did not say it actually took him 44 minutes to accomplish the procedure. He also said that despite his efforts, spinal cord damage could oc-

1. AS 09.10.070 provides in relevant part that "[n]o person may bring an action ... for any injury to the person ... unless commenced within two years."

2. In reviewing judgments based on orders granting summary judgment, we take that view of the facts which is most favorable to the non-moving party. *Carter v. Hoblit,* 755 P.2d 1084, 1085 n. 1 (Alaska 1988). This statement of facts is made from that perspective.

cur, because of lack of blood, or bruising of the spinal cord, which he said had occurred. He also said the paralysis might not be permanent or total, and that only time would tell as to that. She states that she discussed the operation with Pedersen but

> it never occurred to us that Dr. Flannery or Kibbey had done anything wrong. Quite the contrary since Dr. Flannery had left us both with the impression that he had saved Einar's life, and had accomplished the operative procedures just as he had planned them.

The Fairbanks Memorial Hospital records tell a somewhat different story. Dr. Flannery's discharge summary states: "The biggest problem was that post[-]operatively the patient had an anterior spinal cord syndrome secondary to repair of the transected thoracic aorta." The records also show that Pedersen's aorta was clamped for approximately forty-four minutes. Although the records were available to Pedersen at the time he was discharged from Fairbanks Memorial Hospital on December 5, 1983, he did not obtain or review them then.

Pedersen retained an attorney, Bob Beconovich, on or about December 30, 1983, initially for the purpose of defending him on the traffic ticket which he had been issued as a result of the accident. Eventually Beconovich was instructed to look into potential claims for Pedersen's injury. In the process of doing so, Beconovich associated with another attorney, Paul Barrett. Potential claims against the other driver, and against the manufacturer of Pedersen's vehicle, Ford Motor Company, were investigated but were found to be unsupportable. Sometime in the spring of 1985, Pedersen was referred to his current counsel, Michael Flanigan. Flanigan was interested in the potential claim against Ford Motor Company. He retained experts to investigate it and had Pedersen obtain his medical records from Fairbanks Memorial Hospital for review by these experts. The medical records were obtained in June of 1985. A few months later suit was filed against Ford.

During the suit against Ford, Flanigan obtained a set of medical records to produce for Ford and for review by Pedersen's biomechanical experts. At this point, Flanigan reviewed the medical records and states that he saw nothing in them which suggested a medical malpractice claim to him.

In the summer of 1988, one of Pedersen's experts in the Ford case called Flanigan to tell him that medical malpractice may have occurred during the operation performed by Drs. Flannery and Kibbey. At about the same time, Flanigan received a similar report from Ford's counsel, who had obtained similar information from an expert he had retained. Thereafter, on November 8, 1988, this suit was filed.

## DISCUSSION

### A. *Statute of Limitations*

The parties agree that this action is governed by AS 09.10.070 which requires an action to be brought within two years "after the cause of action had accrued." AS 09.10.010. Ordinarily, a personal injury action "accrues" when the plaintiff is injured. However, Alaska, along with most other American jurisdictions, has adopted the discovery rule under which the statute does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of the elements essential to his cause of action. *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988).

The discovery rule first gained general currency in medical malpractice cases where its need was felt most strongly when the medical injury did not manifest itself until after the statute of limitations had run. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 30, at 166–67 (5th ed. 1984). The rule soon spread to malpractice cases brought against other professionals, *e.g.*, *Greater Area Inc. v. Bookman*, 657 P.2d 828 (Alaska 1982) (attorney malpractice), and then to tort cases in general. *E.g.*, *Hanebuth v. Bell Helicopter Int'l*, 694 P.2d 143, 144 (Alaska 1984) ("[I]t is the nature of the problems faced by plaintiff in discovering his injury and its cause, and

not the occupation of the defendant, that governs the applicability of the discovery rule.") (quoting *Stoleson v. United States,* 629 F.2d 1265, 1269 (7th Cir.1980)).

■ Although the need for the discovery rule is most clear in cases where the plaintiff's injury is undiscovered and reasonably undiscoverable within two years after it was caused, it also applies to cases where the injury is known but its cause is unknown and reasonable diligence would not lead to its discovery. *Hanebuth,* 694 P.2d at 143 (helicopter crash wreckage not discovered until eight years after accident).

The formulation of the discovery rule which we typically employ, namely that a cause of action does not accrue until a plaintiff "discovers, or reasonably should discover, the existence of all the elements of his cause of action," *State, Dep't of Corrections v. Welch,* 805 P.2d 979, 982 (Alaska 1991), is broad enough to cover other undiscovered and reasonably undiscoverable elements such as whether the cause of the injury was tortious.[3] Pedersen, in the present case, argues that he did not know, and had no reason to know, either that the operation was the cause of his paralysis or that the operation was negligently performed.

The purpose of statutes of limitations is to eliminate the injustice which may result from the litigation of stale claims. *Johnson v. City of Fairbanks,* 583 P.2d 181, 187 (Alaska 1978). Statutes of limitations should be capable of application without engendering extensive litigation before the case on the merits is litigated. Thus, in theory, the statutes of limitations should begin to run on the occurrence of a definite event.

Application of the discovery rule, however, is dependent on facts that are often unclear. When a plaintiff first learned of an injury or its cause is a fact which may sometimes be in dispute. When a plaintiff first should have learned of an injury or its cause is frequently debatable. *See Welch,* 805 P.2d at 982. [4]

■ Reasonable minds may differ as to whether Pedersen should have discovered that the operation was probably the cause of his paralysis prior to two years before he filed suit on November 8, 1988. The statement in Pedersen's hospital records that he suffered from "anterior spinal cord syndrome secondary to repair of transacted thoracic aorta" is a statement that his paralysis was caused by the operation. However, the ordinary person might not equate "anterior spinal cord syndrome" with paralysis or understand "secondary" to mean "resulting from." Pedersen submitted an affidavit authored by Marshall Eaton, M.D. Dr. Eaton states, based in part on the hospital records, that "there would have been every reason for Mr. and Mrs. Pedersen and their attorney to have been led to believe that Mr. Pedersen's paraparesis was due to the accident itself causing Mr. Pedersen's aorta to be transected."

■ It is hard to charge Pedersen personally with any lack of diligence. He promptly inquired of Drs. Flannery and Emery as to the cause of the paralysis and was not told that the operation was the cause. Further, he hired lawyers in a timely fashion to investigate possible claims against those who may have caused his paralysis. It is possible that his lawyers were negligent in failing to review his medical records to look for medical malpractice.[5] However, as the record now

---

**3.** We note that the United States Supreme Court has refused to extend the discovery rule to the element of tortiousness. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (interpreting the statute of limitations applicable to Federal Tort Claims Act cases).

**4.** Holding an evidentiary hearing well in advance of trial to resolve fact questions goes part way toward meeting the early resolution goals of statutes of limitations. We recommend such a hearing in this case.

**5.** Pedersen is chargeable with any negligence on the part of his attorneys for statute of limitations purposes. "Insofar as 'constructive notice' and 'diligent investigation' affect the computation of the limitations period, the plaintiff is generally charged with the lapses of attorneys acting in his behalf." *Gutierrez v. Mofid,* 39 Cal.3d 892, 218 Cal.Rptr. 313, 318, 705 P.2d 886, 891 (1985). That a plaintiff is so charged was assumed in *Palmer v. Borg–Warner,* 818 P.2d 632 (Alaska 1990).

stands, we are unable to conclude as a matter of law that this is the case.

■ Under the discovery rule, the cause of action accrues when the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action. At that point, he should begin an inquiry to protect his or her rights and he is "deemed to have notice of all facts which reasonable inquiry would disclose." *Mine Safety*, 756 P.2d at 292 (quoting *Russell v. Municipality of Anchorage*, 743 P.2d 372, 376 (Alaska 1987)); *Welch*, 805 P.2d at 982. If, however, a reasonable inquiry would not be immediately productive, the cause of action nonetheless accrues if, within the statutory period, the essential elements may reasonably be discovered. *Palmer v. Borg–Warner*, 818 P.2d 632, 638 (Alaska 1990).

There is a difference between asking whether a reasonable inquiry would have produced knowledge, and whether a plaintiff's particular inquiry—which was unproductive—was reasonable. Putting the question in the abstract tends to place the focus on an ideal inquiry, whereas in reality there may have been several possible reasonable courses of inquiry, some of which would be productive and some of which would not be productive. Where the plaintiff actually attempts an inquiry, the fairer question in our view, is to ask whether his inquiry was reasonable. Where there is no attempt, however, there is no choice but to put the question in the abstract.[6]

■ In the present case, Pedersen knew that he became paralyzed following a serious automobile accident which resulted in major surgery. This knowledge was enough to alert a reasonable person of a potential cause of action and thus triggered a duty to begin an inquiry. Pedersen did initiate an inquiry by talking to his physicians concerning the cause of his paralysis, and subsequently hiring counsel. This in-

quiry was, however, unavailing until more than two years after the surgery. The main question in this case is whether Pedersen's inquiry was reasonable. If it was, the statute of limitations should not accrue until he received actual knowledge of the cause of his paralysis or he received new information which would prompt a reasonable person to inquire further. If his inquiry was not reasonable, the cause of action should accrue at the inquiry notice point unless a reasonable inquiry would not have been productive within the statutory period. These are genuine issues of material fact which must be resolved at an evidentiary hearing.

**B.  Estoppel**

■ There are also genuine issues of material fact concerning Pedersen's claim that Dr. Flannery is estopped from relying on the statute of limitations. The elements of an estoppel are a misrepresentation, actually and reasonably relied upon:

> Establishment of estoppel generally requires the party seeking to assert it to show "that the other party made some misrepresentation, or false statement, or acted fraudulently, and that he reasonably relied on such acts or representations ... and due to such reliance did not institute suit timely." Although "there can be circumstances where an inaction or silence combined with acts or representations can give rise to an appropriate situation calling for the application of the estoppel doctrine," ... a plaintiff generally cannot evoke estoppel unless he has exercised due diligence in attempting to uncover the concealed facts.

*Russell v. Municipality of Anchorage*, 743 P.2d 372, 376 (Alaska 1987) (quoting *Groseth v. Ness*, 421 P.2d 624, 632 n. 23 (Alaska 1966)).

> In order to establish a right to equitable estoppel under Alaska law, a plaintiff must produce evidence of fraudulent con-

---

**6.** *Mine Safety* and *Palmer* are cases where there was no reasonable inquiry as a matter of law by the plaintiff within two years after learning of the injury or death. In *Greater Area Inc.* the plaintiff did inquire, but the inquiry was not immediately productive. We found that the plaintiff's inquiry was reasonable and held that the cause of action did not accrue until the inquiry was productive. *Id.* at 831.

duct upon which it reasonably relied when forebearing from suit.

*Gudenau & Co., Inc. v. Sweeney Ins., Inc.,* 736 P.2d 763, 769 (Alaska 1987). An affirmative misrepresentation is not always necessary to establish estoppel. As we have observed, "[t]he settled rule is that the mere failure by a person to disclose a fact concerning a cause of action which arises against him does not suffice to toll the statute unless the defendant owed a duty of disclosure." *Russell,* 743 P.2d at 376.

■ Pedersen claims that Dr. Flannery misrepresented the true cause of his paralysis. To support this, Pedersen points to Dr. Flannery's response that "he wasn't sure but [Pedersen's paralysis] could have been caused by [Pedersen's] spinal cord swelling due to a blow to the spine or because of a lack of blood flow to the legs." This contrasts with Dr. Flannery's report in Pedersen's medical records which states "[a]nterior spinal cord syndrome secondary to repair of transected thoracic aorta."

■ In our view, Dr. Flannery's statement to Pedersen is on the borderline of what one would normally consider a misrepresentation. In any case, it omits important information. In the context of a physician-patient relationship, Dr. Flannery had a duty to disclose the fact that the operative procedures were a cause of Pedersen's paralysis. The physician-patient relationship is one of trust. Because the patient lacks the physician's expertise, the patient must rely on the physician for virtually all information about the patient's treatment and health. A physician therefore undertakes, not only to treat a patient physically, but also to respond *fully* to a patient's inquiry about his treatment, i.e., to tell the patient everything that a reasonable person would want to know about the treatment. *See Carter v. Hoblit,* 755 P.2d 1084, 1086 (Alaska 1988) ("Fraud can be established by silence or non-disclosure when a fiduciary relationship exists between the parties.... The fiduciary has a duty to fully disclose information which might affect the other person's rights and influence his action."); *Greater Area Inc. v. Bookman,* 657 P.2d 828, 830 (Alaska 1982) ("The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests."). Thus, when Pedersen asked Dr. Flannery what had caused his paralysis, it was not enough to say he wasn't sure but it could have been a blow to the spine or loss of blood. A reasonable person in Pedersen's position would want to know that the operation was a cause.[7]

Dr. Flannery therefore had a duty to disclose to Pedersen the fact that the length of time his aorta was cross-clamped was a cause of his paralysis. His failure to make a full disclosure satisfies the first requirement in the equitable estoppel analysis.[8]

The appellees claim that Dr. Flannery subsequently cured his misrepresentation by making a full disclosure of the cause of Pedersen's paralysis in the medical records. In our view this point goes to the reasonableness of Pedersen's reliance on Dr.

---

7. Contrary to what the appellees claim, this duty of disclosure does not require doctors to admit liability. Rather, if asked a direct question, a doctor must inform the patient of any relevant information which a reasonable person would want to know about his treatment. In this case, the fact that the operative procedures themselves caused Pedersen's paralysis does not establish that any of the defendants are liable. It is possible that the procedures, despite their effects, were the most appropriate under all the circumstances.

8. Citing *Reyes v. County of Los Angeles,* 197 Cal.App.3d 584, 243 Cal.Rptr. 35, 40–41 (1988), the appellees argue that a misrepresentation does not toll the statute of limitations. However, *Reyes* does not consider, or mention, a physician's duty of disclosure. There are numerous cases in California and in other jurisdictions which recognize this duty in a statute of limitations context. *See, e.g., Emmett v. Eastern Dispensary & Casualty Hosp.,* 396 F.2d 931, 935 (D.C.Cir.1967); *Brown v. Bleiberg,* 32 Cal.3d 426, 186 Cal.Rptr. 228, 234, 651 P.2d 815, 821 (1982) (en banc); *Pashley v. Pacific Elec. Co.,* 25 Cal.2d 226, 153 P.2d 325, 330 (1944); *Witherell v. Weimer,* 515 N.E.2d 68, 73 (Ill.1987); *Kern v. St. Joseph Hosp.,* 102 N.M. 452, 456, 697 P.2d 135, 139 (1985); *see also* 61 Am.Jur.2d *Physicians and Surgeons,* §§ 167, 229 (1981).

Flannery's misrepresentations, the second requirement in the equitable estoppel analysis, and is a question of fact. It is closely related to the question which must be answered concerning application of the discovery rule: whether Pedersen's actions in inquiring as to the cause of his injury were reasonable.[9]

The mere fact that the cause of Pedersen's paralysis would have been apparent upon an informed reading of his medical records does not necessarily mean that Pedersen's reliance on the misrepresentations of Dr. Flannery was unreasonable. Similar fact situations have arisen in other jurisdictions where a provider of medical services has made a misrepresentation which was relied on by a plaintiff, but was contradicted by medical records. Courts have not held that the fact that the true state of affairs appeared in the medical records necessarily precluded an estoppel. *Nutty v. Jewish Hosp.*, 571 F.Supp. 1050, 1054 (S.D.Ill.1983); *Almengor v. Dade County*, 359 So.2d 892, 894 (Fla.App.1978); *Krueger v. St. Joseph's Hosp.*, 305 N.W.2d 18, 20–21, 25 (N.D.1981); *cf. Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 10–12, 421 N.E.2d 869, 874–76 (1981) (plaintiff reasonably should have known that product prescribed by doctors was causing leg problems, nonetheless, plaintiff should have the chance to prove estoppel), *aff'd*, 118 Ill.2d 321, 113 Ill.Dec. 259, 263–64, 515 N.E.2d 68, 72–73 (1987).

REVERSED and REMANDED.

RABINOWITZ, Chief Justice, concurring.

The court's characterization of the main question in this case as whether Pedersen's inquiry was reasonable is possibly misfocused.

As the court correctly notes, Pedersen is chargeable with any negligence on the part of his attorney for statute of limitations purposes, and that "[i]t is possible that his lawyers were negligent in failing to review his medical records to look for medical malpractice." [1]

I think it significant that in the course of the Pedersen–Ford litigation, Flanigan (one of Pedersen's attorneys) reviewed the medical records and saw nothing in them which suggested a medical malpractice claim to him. In my view, the medical records which were in Flanigan's possession placed him on inquiry notice. In other words, these medical records should have led Flanigan, commencing in February 1986, to conduct a reasonable inquiry into the cause of Pedersen's paralysis.[2] If Flanigan's inquiry was not reasonable, Pedersen's medical malpractice cause of action accrued, for statute of limitations purposes, in February of 1986.[3]

COMPTON, Justice, dissenting in part.

A person is alerted to the fact that he or she has a potential cause of action when he or she discovers, or reasonably should have discovered, the existence of all elements

**9.** In *Carter v. Hoblit*, 755 P.2d 1084, 1087 (Alaska 1988), we held that there is no requirement that a fraud victim act reasonably in order to be entitled to the benefit of a statutory discovery rule. We noted the growing trend of courts "to move toward the doctrine that negligence in trusting a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy." *Id.* (quoting W. Jaeger, *Williston on Contracts* § 1515B, at 487 (3rd ed. 1970)). We observed in *Carter* that in actions not involving the statutory discovery rule reasonable reliance remains an element of estoppel. Pedersen does not argue that the *Carter* holding should be extended to this case.

**1.** In this regard the court notes that a plaintiff is generally charged with the lapses of an attorney acting in his behalf insofar as constructive notice and diligent investigation impact upon the computation of the applicable limitations period.

**2.** Dr. Martino's November 23, 1984, report reads in part as follows:

[A]fter surgery his legs were flaccid. Currently, on examination he has paraplegia with sensory level at TII.... This is consistent with spinal cord injury, probably at TR 10 or 11. In light of the preservation of posterior function, *this may very well be due to* ischemia suffered as a result of his ruptured aorta *and the ensuing surgery.*
(Emphasis added.)

**3.** If necessary, on remand the superior court should determine whether a physician's misrepresentation trumps any negligence on the part of the patient's attorney.

essential to his or her cause of action. It is settled law that when a reasonable person is so alerted, the person is put on inquiry notice. This means that the person is "deemed to have notice of all facts which reasonable inquiry would disclose." *Mine Safety Appliances Co. v. Stiles,* 756 P.2d 288, 292 (Alaska 1988) (quoting *Vigil v. Spokane County,* 42 Wash.App. 796, 714 P.2d 692, 695 (1986)).

It is not clear just what "inquiry" the court is referring to throughout its opinion. The discovery rule this court adopted in *Greater Area Inc. v. Bookman,* 657 P.2d 828 (Alaska 1982), contemplates a sequence of activities by a plaintiff. First, the plaintiff discovers, or reasonably should discover, the existence of all elements essential to his or her cause of action. Presumably this discovery can result from any number of unrelated or interrelated activities. The plaintiff may actively solicit information, a third person may volunteer information to the plaintiff, a pain may lead to a new medical examination, which may itself uncover information. Any of these may lead to discovery of the elements essential to a cause of action. The examples are endless. Whatever the activity or source of information, the plaintiff discovers, or reasonably should discover, the elements essential to a cause of action. At *that* point the statute of limitations begins to run.

As the last sentence of the following quote demonstrates, the court contemplates a far different course of conduct:

Under the discovery rule, the cause of action accrues when the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action. At that point, he should begin an inquiry to protect his or her rights and he is "deemed to have notice of all facts which reasonable inquiry would disclose." If, however, a reasonable inquiry would not be immediately productive, the cause of action nonetheless accrues if, within the statutory

period, the essential elements may reasonably be discovered. *Palmer v. Borg–Warner,* 818 P.2d 632, 638 (Alaska 1990).

Op. at 908 (other citations omitted).

It is clear from this statement that the court is identifying at least two separate accrual dates. Neither of these is the discovery rule accrual date we adopted in *Bookman,* and reaffirmed as recently as in the republished *Palmer v. Borg–Warner,* 818 P.2d 632, 634 n. 3 (Alaska 1990). *See also State v. Welch,* 805 P.2d 979, 981–82 (Alaska 1991). One separately identifiable accrual date is "when the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action." Op. at 908. This phrase expresses a meaning different than that expressed in "the existence of all elements essential to a cause of action," *Mine Safety,* 756 P.2d at 291, or "the existence of all the elements of [the] cause of action," *Bookman,* 657 P.2d at 829, two phrases which I consider to mean the same thing. It is also an earlier accrual date, since the plaintiff does not have to be aware of as much information to be alerted to the fact that he or she has a "potential" cause of action as is the case when information extends to the "essential elements" of a cause of action. In this case the court concludes that Pedersen was alerted and put on inquiry notice [1] when he "knew that he became paralyzed following a serious automobile accident which resulted in major surgery." Op. at 908.

The second accrual date is somewhat more difficult to understand, because of the circuity of the court's reasoning. If "reasonable inquiry would not be immediately productive," the cause of action accrues, *i.e.* the statute of limitations begins to run, "if, within the *statutory period,* the essential elements may be reasonably discovered." (Emphasis added). Op. at 908. Yet it is the accrual of the cause of action that puts the plaintiff on inquiry notice in the first place. The court is saying that

---

**1.** The inquiry notice to which Chief Justice Rabinowitz refers in his concurring opinion contemplates "a reasonable inquiry into the cause of Pedersen's paralysis". (Footnote omitted).

This patently is not the same as "an affirmative duty to investigate *all* potential causes of action" required by *Palmer v. Borg–Warner.*

after the cause of action has accrued, and during the running of the statute, the cause of action may again accrue, *i.e.* the statute may start running again.

I do not agree that the discovery rule contemplates these separately identifiable accrual dates. The rule applied by the court is not the discovery rule adopted in *Bookman.* Indeed, it is in part a rule we abandoned in *Bookman.* It is a harsh rule, because in *Palmer v. Borg–Warner,* 818 P.2d 632, 637, this court held that "upon notification of injury or death, the claimant or estate has an affirmative duty to investigate *all* potential causes of action before the statute of limitations expires." (Emphasis in original). If this is indeed the law, Pedersen was under a duty to investigate *all potential causes of action* before the statute expired. Applying the court's *Borg–Warner* rule, Pedersen should lose, just as Palmer lost. Inexplicably, however, Pedersen does not lose. What is apparent is that a potential cause of action is to be presumed from nothing more than an accident and an injury.[2]

I also do not agree that once a plaintiff is put on inquiry notice, the statute of limitations is somehow tolled as long as the plaintiff is making reasonable, but unproductive, efforts to establish his or her cause of action. A reasonable inquiry should disclose facts which tend to establish a sufficient basis to support filing a cause of action. If an inquiry does not disclose such facts, the inquiry may not have been reasonable. However, it also may be that a reasonable inquiry does not disclose such facts because "there is anoth-

er legally sufficient reason to toll the statute or estop [the defendant] from relying on the statute." *Gudenau & Co., Inc. v. Sweeney Insurance, Inc.,* 736 P.2d 763, 768 (Alaska 1987). For instance, conduct of the defendant may hinder inquiry, *i.e.* engaging in fraud, concealment, and like conduct; the nature of the incident itself may render inquiry fruitless, *i.e.* failing to find wreckage of an aircraft in desolate, rugged terrain, despite the best efforts of military and civilian air and ground searchers. Yet if a reasonable inquiry would have disclosed facts which tend to establish a sufficient basis to support filing a cause of action, the statute of limitations will commence running when the person is put on inquiry notice. What constitutes a "reasonable inquiry" should be measured by an objective standard, and not simply by whether the inquiry made by a particular person is reasonable.

This court concludes that Pedersen was on inquiry notice. If that is correct, he is deemed to have notice of all facts which reasonable inquiry would disclose, not just the facts which his particular inquiry discloses.

In my view this question, if indeed it is the "main question in this case," is whether reasonable inquiry would have disclosed facts which tend to establish a sufficient basis to support filing a cause of action within the time permitted by the statute of limitations. The question is not whether Pedersen's inquiry was reasonable. The standard must be an objective one to achieve uniform application of the statute

**2.** Until today's application of the rule stated in *Palmer v. Borg–Warner* to a medical malpractice claim, *Borg–Warner* could be rationalized as an air crash exception to the discovery rule. This could be derived from *Borg–Warner,* at 636 n. 6 ("air crashes do not normally occur absent negligence, even in inclement weather ... the estate reasonably should have known from the date of being informed of the crash that potential claims existed against the pilot, the carrier, or the manufacturer."). However, since Pedersen's duty to inquire was triggered by his knowledge that "he became paralyzed following a serious automobile accident which resulted in major surgery," *Borg–Warner* is not simply an air crash exception to the discovery rule. Ironical-

ly, *Borg–Warner's* comment about the cause of air crashes, taken from *Widmyer v. Southeast Skyways, Inc.,* 584 P.2d 1, 14 (Alaska 1978), was published just two months after an article appeared attributing the deaths of most air crash victims in Alaska to the poor judgment of pilots. The article contained a quote from the National Transportation Safety Board's chief accident investigator in Alaska, who stated:

The common denominators [in light plane crashes in Alaska] are lack of experience, lack of training and, for the commercial operators, lack of supervision.

Anchorage Daily News, September 11, 1990, at 1, col. 6.

of limitations, a result I believe best serves affected interests.

More importantly, based on the record before us I do not agree that Pedersen was on inquiry notice. Inquiry notice presupposes that a person is alerted to the fact that he or she has a potential cause of action. Op. at 908. As this rule is stated in *Mine Safety Appliances Co. v. Stiles,* 756 P.2d at 291, the statute of limitations begins to run when the person "discovers, or reasonably should have discovered, the existence of all elements essential to his cause of action." This is but a restatement of the discovery rule this court adopted in *Greater Area Inc. v. Bookman,* 657 P.2d 828 (Alaska 1982). If a person does not discover all the elements of his or her cause of action, and reasonably could not have discovered all such elements, the person is not alerted to the fact that he or she may have a potential cause of action. The statute of limitations does not begin to run until the person "discovers, or reasonably should discover" all elements. *Id.* at 829.

Discovery by a reasonable person of all *elements* of a cause of action is not the same as discovery through reasonable inquiry of *facts* tending to establish a sufficient basis to support filing a cause of action.

The "main" question in this case, in my view, is when a reasonable person should have discovered the existence of all the elements of his or her cause of action against the medical care providers sued, thereby triggering "inquiry notice." In my view that is by no means clear. Pedersen was looking for someone to whom he could attach liability for his injuries, including the driver of the automobile with whom he collided, the manufacturer of his own automobile, and even the ambulance crew that transported him to the hospital following the collision. He sued and settled with the manufacturer of his automobile. The settlement was for approximately $600,000. That was not a nuisance value settlement. It cannot be said that Pedersen was not alerted to the fact that he had a potential cause of action *against the automobile manufacturer* or that he failed to uncover

facts concerning that cause of action through apparently reasonable inquiry. Obviously his focus was not on his medical care providers. Would a reasonable person have acted differently?

The record before us discloses that Pedersen was seriously injured in a traumatic automobile collision. The impact was so severe that his aorta was ruptured, necessitating use of special survival clothing to minimize internal hemorrhaging pending surgery. Loss of blood into the body cavity was depriving the cardiovascular system of oxygen and fluid necessary to sustain bodily functions. Immediate surgery was required to "repair" the aorta (sew it back together), and thus save Pedersen's life. Although his legs were responsive to stimulus upon admission to the hospital and prior to surgery, they were not afterward. Pedersen is partially paralyzed.

Pedersen and his wife both inquired of his physicians about the cause of the paralysis. They were given information that was less than complete, and that arguably could be viewed as misleading. Medical records indicate that the flow of blood was interrupted for a period longer than one of the physicians said was acceptable before complications might arise. The records also state that the paralysis was "secondary" to the "repair," meaning that it was caused by the operation. However, neither Pedersen's treating physicians, consulting physicians or hospital ever stated directly to Pedersen or his wife that the operation was the cause of the paralysis, medical negligence aside.

Even if a person understood that the surgery caused the paralysis, would a reasonable person's attention be directed to his medical care providers to the extent that reasonableness would require him to investigate the surgery? Would a reasonable person be more likely to look to those most apparently culpable, such as the other automobile driver, the automobile manufacturer, or possibly the ambulance crew? Would it be reasonable for a person to proceed on the theory that culpability lay in the actors involved in the accident, which itself was the reason the person had to

**914**

have the life saving surgery? Was it reasonable for the person's attorney to continue to pursue those most apparently culpable, even after having reviewed the hospital records? Do the incomplete and arguably misleading answers given by the person's physician affect the reasonableness of the inquiry?

I conclude that reasonable minds could differ on how a reasonable person would respond in the circumstances described. A jury question is presented whether Pedersen, as a reasonable person, should have discovered all the elements of his cause of action against his medical care providers more than two years before he sued them.

Assuming the court's conclusion that Pedersen was put on inquiry notice upon learning that his legs were paralyzed, a discovery made immediately following the surgery that resulted from the accident, under the formulation of the rule applied by this court in *Borg–Warner*, Pedersen should have been under a duty to investigate *all* possible causes of the injury. This would obviously include the conduct of his medical care providers. Only one of his physicians allegedly failed to make a full disclosure to Pedersen and his wife. It is difficult to conclude that the physician's alleged failure to fully disclose matters to them would have had any effect on a reasonable inquiry, since the medical records themselves, always available to Pedersen, disclosed what the physician had not. An inquiry based on those records would have led to the surgery as the cause of the paralysis. This discovery would or should have focused inquiry on the physician. Reliance on his alleged failure to disclose would have become unreasonable at a point earlier than two years before suit was filed. As to the other medical care providers, no legally sufficient cause has been shown to postpone accrual of the statute beyond the inquiry notice date the court establishes. Thus if we accept the court's analytical framework, Pedersen should lose.