# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Respondent,

        v.

KAREN R. MORGAN,

        Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 71109-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 2, 2015

APPELWICK, J. — Morgan appeals her conviction for third degree criminal mistreatment resulting from her care of an elderly patient at an adult family home. Morgan argues that the prosecutor improperly appealed to the passions of the jury and prejudiced the outcome, entitling her to a new trial. Her statement of additional grounds lacks merit. We affirm.

## FACTS

In 2009, Hannah Sinnett, an elderly woman with multiple significant health issues, was a resident of Seattle Heights Elder Care Home. Seattle Heights was an adult family home licensed to and operated by Regina Daniels. Sinnett's attorney-in-fact and brother-in-law, Sam Robison, moved Sinnett into the home in 2006.

Karen Morgan served as the nurse delegator for Seattle Heights. A nurse delegator in an adult family home is charged with examining the residents at least every 90 days and, when appropriate, training and delegating specific nursing care tasks to qualified and trained nursing assistants. WAC 246-840-930. Morgan became Sinnett's nurse delegator in 2006.

On September 10, 2009, Morgan examined Sinnett. Morgan noted that Sinnett did not have any wounds at that time but was at risk for skin breakdown.

Morgan saw Sinnett again on December 22, 2009. She observed that Sinnett had developed several serious pressure ulcers. Pressure ulcers result from continuous pressure on the skin, such as when a patient is bedbound. The constant pressure causes the skin to break down and potentially become infected. An infected pressure ulcer can be fatal.

Morgan called Robison and informed him that Sinnett had very serious sores. She told Robison that Sinnett could go to the hospital or, if Robison wanted, Morgan could treat Sinnett at Seattle Heights. Morgan did not say that the wounds were open or infected or that Sinnett was at risk for death. Robison opted to have Sinnett stay at Seattle Heights.

The next day, registered nurse Courtney Tarr was caring for another resident at Seattle Heights when she noticed a bad odor. She asked the caregiver about the smell and was directed to Sinnett's room. Tarr observed two pressure ulcers on Sinnett's left hip and sit bone. Tarr described the ulcers as "[d]eep tissue injury, black, dead tissue, lots of yellowish drainage, horrible odor." She also noted that the wounds were not properly dressed.

Tarr called Daniels and asked why Sinnett was not in the hospital. Daniels said that she would come to Seattle Heights but did not arrive before Tarr left. Later that day, Morgan called Tarr and told her that Sinnett's plan of treatment was antibiotics and bed rest. Tarr responded that she would call 911 unless Sinnett was taken to the hospital. Morgan agreed to take Sinnett.

Four days later, on December 27, Sinnett was admitted to the emergency room at Swedish Hospital. Morgan did not accompany Sinnett to the hospital. The ambulance crew reported that Sinnett's chief complaint was "[a]ltered mental status."

Dr. Benjamin Seo treated Sinnett in the emergency room. He noted that Sinnett had several large chronic ulcers with signs of infection. The larger wounds were covered in a layer of dead tissue. Sinnett was also showing signs of sepsis. Dr. Seo provided her "heavy duty" intravenous antibiotics and admitted her to the hospital.

On January 7, 2010, Sinnett was transferred to a nursing home. She died five days later.

On December 21, 2011, the State charged Morgan with second degree criminal mistreatment in violation of RCW 9A.42.030. Under the statute, a person is guilty of criminal mistreatment in the second degree if he or she is employed to provide a dependent person the basic necessities of life and recklessly (a) creates an imminent and substantial risk of death or great bodily harm, or (b) causes substantial bodily harm by withholding any of the basic necessities of life. RCW 9A.42.030(1).

Morgan pleaded not guilty. Her trial began on August 15, 2013. Her defense theory was that she came into a situation where the risk of death or great bodily harm had already been created and that it would not have affected Sinnett's overall health if she had been hospitalized when Morgan first noticed her ulcers.

In closing argument, the prosecutor said,

> The defendant may argue to you in closing, "Well, Hannah was dying anyway. The defendant really didn't create a risk, because it was already too late."

Ladies and gentlemen, Hannah, we know, got better when she went into the hospital, not for a long time, but for a couple of weeks she was better. Her appetite improved, her mental state improved, and her lab tests showed improvement. That in itself is evidence that she wasn't dying on the 22nd, when [Morgan] took control of her care.

Yes, Hannah probably didn't have long to live anyway, but at that stage of her life every day mattered, and how dare [Morgan] imply that this person's life didn't matter and that she was dying.

Morgan objected that this was "improper argument," and the trial court sustained. When Morgan moved to strike or instruct the jury to disregard the comment, the court responded, "I'll sustain your objection."

The jury found Morgan guilty of the lesser included crime of third degree criminal mistreatment. She was sentenced to four months of electronic home detention. She appeals.

## DISCUSSION

### I. Prosecutorial Misconduct

Morgan argues that the prosecutor improperly appealed to the jury's passion and prejudice by saying, "[H]ow dare [Morgan] imply that this person's life didn't matter and that she was dying." The State maintains that the comment did not constitute misconduct, because it was merely an expression of indignation warranted by the facts of the case. But, the trial court sustained Morgan's objection that the prosecutor's argument was improper. The State does not cross-appeal to challenge that ruling. The ruling is the law of the case. See Virgil v. Spokane County, 42 Wn. App. 796, 799, 714 P.2d 692 (1986) (holding that an unchallenged ruling becomes the law of the case).

However, an appellant bears the burden of showing that a prosecutor's improper comment was prejudicial. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

4

Here, Morgan maintains that she was prejudiced by the trial court's refusal to strike the comment or instruct the jury to disregard it.

Morgan first asserts that this refusal provided undue legitimacy to the State's improper argument. When the trial court overrules an objection to a prosecutor's improper comment, that ruling lends an aura of legitimacy to the comment. State v. Davenport, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984). But here, the trial court sustained Morgan's objection. This signaled to the jury that the prosecutor's statement was improper and the court did not endorse the statement.

Morgan further argues that, by leaving the statement in the record, the court created a serious risk that the comment would influence the jury's verdict. Upon review of the evidence and the context of the prosecutor's comment in the full trial, we disagree.

The jury convicted Morgan of the lesser included crime of criminal mistreatment in the third degree. This required the State to show that Morgan (1) assumed responsibility or was employed to provide Sinnett the basic necessities of life and, (2) with criminal negligence, created an imminent and substantial risk of or caused substantial bodily harm to Sinnett by withholding any of the basic necessities. RCW 9A.42.035(1).

As to the first element, Robison testified that Morgan advised him that she could treat Sinnett. He said that Morgan gave him confidence she could take care of it and he trusted her because she was a nurse who knew Sinnett. This showed that Morgan assumed responsibility to provide Sinnett the basic necessities of life.

As to the second element, the State argued that Morgan caused Sinnett to suffer, her condition to worsen, and her risk of dying to increase by not taking her to the hospital for five days. There was considerable evidence to support this assertion. Multiple

medical professionals testified that Morgan's in-home treatment plan was inadequate and Sinnett's condition required hospitalization. When Sinnett arrived at the hospital, she was malnourished, dehydrated, and showing signs of infection. Her condition had become so severe that it was appropriate not to pursue aggressive treatment of her wounds, such as surgery. Laura Vadman, a wound specialist who treated Sinnett at Swedish, testified that, if Sinnett had been brought to the hospital on the 22nd, she would have had a higher chance of surviving treatment. Dr. Laura Mosqueda, a specialist in family and geriatric medicine, testified that hospitalizing Sinnett sooner would have given her "more of a chance to recover" and Sinnett "would have suffered a lot less." The State also elicited testimony from multiple doctors that Sinnett's death was not inevitable. For example, Dr. Mosqueda testified that Sinnett's condition improved after being admitted to the hospital and that Sinnett showed an interest in food, suggesting that she was not in the active dying phase of her life. Dr. Mosqueda further stated that she believed that Sinnett "was severely neglected, and it led to her death." In the face of this strong evidence, Morgan has not established a substantial likelihood that the prosecutor's comment affected the jury's verdict.

This conclusion is further supported by the comment's context. The timing of a prosecutor's remark is relevant to its prejudicial value, as statements at the end of argument are more likely to cause prejudice. State v. Lindsay, 180 Wn.2d 423, 443, 326 P.3d 125 (2014). Here, the prosecutor's comment was a brief, isolated statement in the middle of her closing argument. And, directly before and after the comment, the prosecutor referred to the facts in evidence.

6

Morgan has not demonstrated that she was prejudiced by the trial court's refusal to strike or instruct on the prosecutor's isolated comment. We deny her request for a new trial.

II. Statement of Additional Grounds

Morgan raises two issues in her statement of additional grounds. First, she argues that the trial court erred in excluding Daniels's testimony. But, the court did not prevent Daniels from testifying. Morgan did not call her as a witness.

Morgan further argues that she was not read her Miranda[1] rights. As support, she cites to only the testimony of Detective Michael Gordon, who investigated Sinnett's death. But, Detective Gordon did not testify about Morgan's arrest. Nor is there relevant evidence elsewhere in the record. We cannot review Morgan's challenge. See RAP 10.10(c) (an appellate court will not consider an argument made in a statement of additional grounds for review if it does not inform the court of the nature and occurrence of the alleged errors); State v. Alvarado, 164 Wn.2d 556, 559, 192 P.3d 345 (2008). If there are material facts that were not presented and heard, Morgan's recourse is to bring a properly supported personal restraint petition. See RAP 16.4.

We affirm.

_Appelwick_

WE CONCUR:

_Leach, J_                          _Trickey, J_

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).