Lorraine F. PALMER and Edward E. Dillon, Jr., Personal Representatives of the Estate of Merrett P. Palmer, Appellants,

v.

BORG–WARNER CORPORATION and its Division Marvel–Schebler/Tillotson, Facet Aerospace Products Company, Facet Enterprises, Inc.; and Edward DePriest, Appellees.

No. S–4101.

Supreme Court of Alaska.

Sept. 25, 1992.

Sanford M. Gibbs, Hagans, Brown, Gibbs and Moran, Anchorage, Steven D. Smith, Anchorage, and H. Van Z. Lawrence, Fairbanks, for appellants.

David T. Hunter and Michael K. Nave, Lane Powell Spears Lubersky, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal is from the trial court's denial of an Alaska Civil Rule 60(b) motion for relief from a Judgment of Dismissal. We reverse and direct the court to reconsider the motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 8, 1986, a Piper PA–18 aircraft crashed in the Brooks Range, roughly thirty miles south of Umiat. Kenneth Swanson, the pilot, and Merrett P. Palmer, his sole passenger, died in the accident. Palmer's widow was informed of her husband's death at least by September 11, 1986.[1] On October 1, 1986, the aircraft's engine was removed by helicopter from the scene of the crash and later transported to Fairbanks. The National Transportation Safety Board (NTSB) then began an investigation into the cause of the crash, issuing its findings in July 1987.[2] The NTSB's

---

**1.** Mrs. Palmer submitted an affidavit indicating that she first had notice of her husband's death on September 10. The superior court found that Mrs. Palmer had such notice on September 11. For purposes of this appeal, the discrepancy is irrelevant.

**2.** The NTSB controls access to aircraft wreckage from the time of a crash until the NTSB investigation is completed. Relevant federal regulation provides as follows:

Preservation of aircraft wreckage, mail, cargo, and records.

report concluded that there was probable cause to believe that the crash was caused by pilot error. The report noted that the "engine teardown revealed only impact and fire damage."

The report also noted that the "carburetor was intact and showed no signs of external damage other than heat damage" and that the "carburetor was equipped with a fibre composite float which was heavily damaged by the fire."

On July 30, 1987, the personal representatives of the Palmer estate filed a wrongful death action against the estate of Kenneth Swanson and his employer, Dennis Reiner, alleging negligent operation of the aircraft. In November the Swanson estate answered, asserting *inter alia*, that (a) third parties were responsible for the accident; and (b) the Palmer estate had failed to join indispensable third parties. Neither the basis for the third parties' liability nor the third parties were identified. On September 7, 1988, one day before the second anniversary of the crash, Swanson's estate filed a wrongful death action against the Borg–Warner Corporation (Borg–Warner), the carburetor manufacturer,[3] specifically alleging that a defective carburetor caused the crash.

On September 19, 1988, the Palmer estate, after learning that the cause of the crash was more likely a defective carburetor float than pilot error, agreed to the dismissal of its suit against the Swanson estate and Reiner. The Palmer estate filed suit against Borg–Warner the next day, two years and nine days after Palmer's widow first learned of the accident.

Borg–Warner moved for summary judgment against the Palmer estate, arguing that the estate's suit for wrongful death was barred by the two-year statute of limitations provided in AS 09.10.070. The Palmer estate filed a cross-motion for partial summary judgment arguing that "[a]s of September 20, 1986, Plaintiffs did not know, nor could they have reasonably been expected to know, that the carburetor of the aircraft ... may have been defective." The estate claimed that its suit against the manufacturer was timely.

On March 14, 1989, the superior court granted summary judgment for Borg–Warner, ruling the claim time-barred as a matter of law.[4] An Order of Dismissal was entered against the Palmer estate, and the estate appealed. We affirmed the superior court's dismissal, ruling that the estate's suit against Borg–Warner was untimely filed. *Palmer v. Borg–Warner Corp.*, 818 P.2d 632, 636–37 (Alaska 1990) (*Palmer I*). Alleged fraudulent concealment of the cause of the crash was not then an issue at either the trial or appellate level.[5]

---

(a) The operator of an aircraft involved in an accident or incident for which notification must be given is responsible for preserving to the extent possible any aircraft wreckage, cargo, and mail aboard the aircraft, and all records ... until the Board takes custody thereof or a release is granted pursuant to § 831.12(b) of this chapter.

(b) Prior to the time the Board or its authorized representative takes custody of aircraft wreckage, mail, or cargo, such wreckage, mail, or cargo may not be disturbed or moved except to the extent necessary:

(1) To remove persons injured or trapped;
(2) To protect the wreckage from further damage; or
(3) To protect the public from injury.

(c) Where it is necessary to move aircraft wreckage, mail or cargo, sketches, descriptive notes, and photographs, shall be made, if possible, of the original positions and condition of the wreckage and any significant impact marks.

3. The carburetors were manufactured by Borg–Warner's subsidiary, Marvel–Schebler/Tillotson. The Marvel–Schebler carburetor line was later purchased by Facet Enterprises, Inc.

4. Judge Hodges concluded that as of September 11, 1986, the Palmer estate was obligated under Alaska law to investigate in *some* manner its potential claims for wrongful death.

The facts indicate that during the course from September 11, 1986 until the lawsuit— the [Swanson estate's] lawsuit was filed, the plaintiffs in this case did [no] meaningful investigation with respect to any other defendants, other than [Swanson and Swanson's employer].

5. We published our opinion in *Palmer I* on November 16, 1990. We later published a corrected opinion to remedy technical errors. 818 P.2d 632. On November 29, 1990, in a memorandum in support of a petition for rehearing, the Palmer estate contended that Borg–Warner had concealed evidence regarding a carburetor

In February 1990, after a two-week bench trial in the Swanson estate's suit, Judge Hodges issued a memorandum deci-·sion and findings of fact and conclusions of law. He found that:

> [T]he float in the carburetor of the Swanson aircraft absorbed fuel becoming heavy and sinking causing a sudden unexpected engine failure; the absorption of the fuel by the float was a result of a defect in the manufacturing process or a change in the structure of the float over time; the product was defective at the time it was manufactured or did not perform as a reasonable consumer would expect under normal use.

Judge Hodges held Facet Enterprises, Inc. (Facet) legally responsible for the death of Kenneth Swanson due to Facet's failure "to manufacture a carburetor and carburetor float that would perform in a manner that a reasonable consumer would expect." He also found by clear and convincing evidence that:

> Facet knew that some 30–628 and 30–759 Rogers composite floats contained an open cell structure as a result of the manufacturing process; that they knew these floats would absorb fuel and become "heavy"; that they knew a heavy carburetor float would adversely affect the performance of the aircraft engine in which it was installed; that they knew this could cause an unexpected loss of power while in flight; that although they suspected the use of auto gas adversely affected the properties of a Rogers' composite float, none of the tests conducted by them substantiated this; that in spite of the lack of evidence, they published to the FAA, the engine manufacturer and the public, as fact, that auto gas had an adverse affect on the Rogers' composite float; that the estimated cost of changing the existing composite floats to metal floats was approximately 23 million dollars; that if Facet could convince the FAA to issue an AD requiring replacement of the composite floats with metal

floats, this cost would be borne by the consumers; that if a manufacturing defect was acknowledged, it is probable that the cost would have been borne by Facet and/or Rogers; that Facet concealed from the consumers (the engine manufacturer, the airplane manufacturer, and the ultimate user) the fact that some floats in use had open-cell structures which were formed during the manufacturing process; that this failure to disclose is outrageous conduct and a reckless disregard of the rights of others entitling Swanson to an award of punitive damages.

Borg–Warner settled with the Swanson estate prior to entry of final judgment, and the suit was dismissed with prejudice pursuant to stipulation.

On April 23, 1990, the Palmer estate filed a Civil Rule 60(b) motion for relief from judgment. The Palmer estate argued that the finding in the Swanson estate's case that Borg–Warner had engaged in misconduct by concealing from the public the cause of carburetor failure, required that the earlier judgment dismissing the Palmer estate's case be vacated. Judge Hodges denied this motion without comment, findings or conclusions. The Palmer estate appeals.

## II. ELEMENTS REQUIRED TO SET ASIDE A JUDGMENT UNDER RULE 60(b)(2)

██ Civil Rule 60(b)(2) provides that a court may relieve a party from a final judgment because of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Motions for relief from judgment under Rule 60(b) are left to the sound discretion of the trial court and will be reversed on appeal only for an abuse of discretion. *Babinec v. Yabuki*, 799 P.2d 1325, 1332 (Alaska 1990); *Nordin Const. Co. v. City of Nome*, 489 P.2d 455, 472 (Alaska 1971). Abuse of

---

float problem and that this concealment would have prevented even a diligent plaintiff from discovering the defect. In response, Borg–Warner contended that this issue was properly part

of the Palmer estate's appeal from the denial of its Rule 60(b)(2) motion. We deferred consideration of the issue to this appeal.

discretion exists "only where the appellate court is left with a definite and firm conviction on the whole record that the trial judge has made a mistake." *Babinec,* 799 P.2d at 1332.

We articulated the elements required to set aside a judgment under Rule 60(b)(2) in *Montgomery Ward v. Thomas,* 394 P.2d 774, 776 (Alaska 1964).

> [T]he evidence: (1) must be such as would probably change the result on a new trial; (2) must have been discovered since the trial; (3) must be of such a nature that it could not have been discovered before trial by due diligence; (4) must be material; (5) must not be merely cumulative or impeaching.

*Id.*

■■■ The parties disagree whether evidence of Borg–Warner's allegedly fraudulent concealment of the cause of the crash would change the result in a new proceeding.[6] The Palmer estate argues that Borg–Warner's allegedly fraudulent concealment would change the result "since counsel could have argued that equitable estoppel prevented Borg–Warner from asserting the statute of limitations defense upon which the case was dismissed."[7]

This case is complicated because that evidence of fraudulent concealment is presented in the context of a motion for relief from a final judgment under Rule 60(b)(2).[8] Typically, a plaintiff would raise evidence of fraudulent concealment in response to a defendant's argument that the statute of limitations was a defense to the plaintiff's claims. In this case, to determine whether the court abused its discretion when it denied the Palmer estate's Rule 60(b)(2) motion, we must determine whether evidence of fraudulent concealment and the doctrine of equitable estoppel would probably change the result in a new proceeding. We will later return to a discussion of the other Rule 60(b)(2) requirements.

### A. FRAUDULENT CONCEALMENT AND EQUITABLE ESTOPPEL.

■■■ "[A] party who fraudulently conceals from a plaintiff the existence of a cause of action may be estopped to plead the statute of limitation if the plaintiff's delay in bringing suit was occasioned by reliance on the false or fraudulent representation." *Sharrow v. Archer,* 658 P.2d 1331, 1333 (Alaska 1983) (quoting *Chiei v. Stern,* 561 P.2d 1216, 1217 (Alaska 1977)). *See also Pedersen v. Zielski,* 822 P.2d 903, 908–09 (Alaska 1991); *Russell v. Municipality of Anchorage,* 743 P.2d 372, 376 (Alaska 1987). Equitable estoppel generally requires that "the party seeking to assert it show that the other party made some misrepresentation, or false statement, or acted fraudulently and that he reasonably relied on such acts or representations of the other party, and due to such reliance did not institute suit timely." *Groseth v. Ness,* 421 P.2d 624, 632 n. 23 (Alaska 1966).

In its Statement of Points on Appeal, the estate raised the issue of whether the trial court erred "by failing to grant relief pursuant to Rule 60(b)(2)." In the trial court, the estate argued that the doctrine of equitable estoppel supported its Rule 60(b)(2) motion. Thus, Borg–Warner was adequately apprised that equitable estoppel was an issue included in the present appeal. The issue of equitable estoppel is properly before us. *See Lewis v. Anchorage Asphalt Paving Co.,* 535 P.2d 1188, 1195 (Alaska 1975).

---

**6.** The newly discovered evidence standard in Alaska Civil Rule 60(b)(2) applies not only to judgments entered after a trial, but also to summary judgments. *See e.g. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express & Station Employees v. St. Louis Southwestern Ry. Co.,* 676 F.2d 132, 139 (5th Cir.1982) (applying Fed.R.Civ.P. 60(b)).

**7.** The Palmer estate argues that Borg–Warner was equitably estopped from claiming the benefit of the statute of limitations defense under AS 09.55.580(a), the Alaska wrongful death statute, by virtue of Borg–Warner's fraudulent concealment of the defective carburetor float that was the cause of the crash. Borg–Warner contends that the issue of equitable estoppel is improperly before the court because the estate raised only collateral estoppel in its Statement of Points on Appeal.

**8.** The complication occurs because the issue of whether the Palmer estate exercised due diligence is relevant to the determination of whether the Palmer estate has presented a viable equitable estoppel argument and to whether the Rule 60(b)(2) motion should be granted.

### 1. *Reliance as an Element of Equitable Estoppel.*

Borg–Warner argues that the Palmer estate failed to meet the reliance requirement of equitable estoppel, and therefore Judge Hodges' finding of fraudulent concealment in *Swanson* would not change the result at a new proceeding in *Palmer.* Specifically, Borg–Warner contends that the estate has not pled facts which could show that Borg–Warner's conduct in any way caused the estate's late filing. We find Borg–Warner's argument unpersuasive and conclude that Palmer's pleadings satisfy the reliance element of equitable estoppel.

In making this analysis we rely to some extent on authorities discussing the tort of deceit, a claim which is not pled in this case. However, estoppel based on intentional misrepresentation has important elements in common with deceit: knowing false representation; justifiable reliance; and damage. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 105 at 728, 733–34 (5th ed. 1984). Palmer could have filed a claim for deceit instead of or in addition to the 60(b) motion, claiming the loss of its cause of action through the running of the statute of limitations because of Borg–Warner's misrepresentation. In important respects Palmer has made such a claim defensively in the context of its equitable estoppel claim.

Relevant to our discussion is *Anson v. American Motors Corp.*, 155 Ariz. 420, 747 P.2d 581 (App.1987), *cited in Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 n. 4 (Alaska 1988). In *Anson* the trial court granted American Motors' motion to dismiss a wrongful death action against it on the ground that the action was filed after the statute of limitations had expired. On appeal, appellants claimed that "American Motors through its agents made representations to the public concerning the safety and 'ruggedness' of the Jeep CJ that concealed defects of the product and induced reliance by the appellants" and therefore the statute of limitations was tolled. *Id.* 747 P.2d at 589. Appellees maintained that "the manufacturer is entitled to publicly defend its product and that

'there is a significant distinction between advertising a product to the general public and affirmatively concealing information between a plaintiff and the manufacturer of the product during the limitation period.'" *Id.* In reversing the trial court's dismissal, the court held:

> [T]he appellants cite a number of studies and tests done on the Jeep CJ which indicate that the manufacturer was aware of the defects more than a decade prior to the accident that killed their son. The appellants allege that these reports and tests are important because they reveal the appellee's knowledge that the Jeep CJ tended to overturn and its roll bar could not provide protection during a roll over. And that, despite the manufacturer's knowledge of these dangers, it continued to misrepresent the Jeep CJ as a rugged and safe vehicle. The appellants claim they could not reasonably be expected to know of the cause of their son's death prior to the consent decree between American Motors and the Federal Trade Commission. The appellants explain that they were unaware of the cause of the jeep's roll over because the appellees fraudulently concealed the defects with the Jeep CJs, and that it was not until February 23, 1982 that news of the consent order became public as its contents were outlined in the Wall Street Journal. It was at this time that the appellants had sufficient information regarding the severe dangers created by defects in the Jeep CJ to file a claim. In stark contrast, appellant claims that appellees had this information since the late 1960's, and [AMC] failed to pass this information along to the appellants and other consumers but instead made false representations concerning the safety of the Jeep CJ. Clearly, if appellant's allegations are true, they would be sufficient to toll the limitation period under both the discovery rule and the doctrine of fraudulent concealment.

*Id.* at 589–90.

We are also aided in our determination by the factually similar case of *Baker v. Beech Aircraft Corp.*, 39 Cal.App.3d 315, 114 Cal.Rptr. 171 (1974). In *Baker*, the

complainant's pleading contained allegations that an aircraft manufacturer fraudulently concealed dangerous defects in a fuel system, while making representations to the Federal Aviation Administration (FAA) that the fuel system was safe, and that the complainant relied on these false representations. The court held that this pleading was legally sufficient to show fraudulent concealment which would toll the statute of limitations. In applying *Baker* to the facts before it, the *Anson* court explained:

> [In *Baker*], there were no circumstances alleged which would have indicated to a reasonable person, without extensive testing, that a defect in the fuel system caused the crash. There was, therefore, no reason for a reasonable person to doubt the truth of the representations made by Beech regarding the safety of the fuel system, and consequently nothing to put the appellants in that case on notice that either the particular fuel system in question was faulty or that Beech's representations were false. Here, the appellants allege that the false representations made by AMC prevented them from discovering defects in the jeep. Thus, the appellants argue that they had no knowledge of important facts related to the cause of death of their son, and were not sufficiently aware of the causal relationship between the defects in the jeep and their son's death to file a claim.

*Anson*, 747 P.2d at 588.

Neither the *Anson* nor *Baker* courts required detailed pleading of facts demonstrating reliance on the fraudulent concealment. In *Anson*, the court was satisfied with the appellant's allegation that "the false representations ... prevented them from discovering defects...." *Anson*, 747 P.2d at 588. In *Baker*, an allegation that appellants were "lulled into inaction" was sufficient. *Baker*, 114 Cal.Rptr. at 176.

Where fraudulent concealment of facts is successful, the defrauded party's response is inaction, a failure to discover the truth. There will be no "reliance" in the sense of a conscious change of position. Where fraudulent concealment of facts is successful, injured parties are ignorant of the concealment itself and will not act due to their ignorance. However, this is not the type of ignorance for which a party must be penalized.

■ Ignorance may result from inadequate inquiry by the injured party. Ignorance in the sense here used, however, rests on a structure of false representations or fraudulent concealment of critical facts. Such structured ignorance may cause the loss of a valid claim for negligence or products liability by reason of the expiration of the statute of limitations for such claims. *See First Interstate Bank of Fort Collins v. Piper Aircraft Corp.*, 744 P.2d 1197, 1200–01 (Colo.1987); *Baker*, 114 Cal.Rptr. at 176. In these circumstances the "reliance" element of equitable estoppel will be satisfied where injured parties allege and prove they were lulled into inaction by a manufacturer's false representations.[9]

Fraudulent concealment of defects and false representations which prevent the discovery of defects are particularly offensive in the context of manufacturing industries which are heavily regulated because of

---

9. In *Palmer I*, we held that the statute of limitations began to run on the date the Palmer estate became aware of the crash because it "reasonably should have known from [that] date that potential claims existed against the pilot, the carrier, or the manufacturers." 818 P.2d at 634. This holding does not conflict with the rule that fraudulent concealment precludes a defendant from relying on the statue of limitations. Estoppel is "used as a means of preventing [a party] from taking an inequitable advantage of a predicament in which his [or her] own conduct had placed his [or her] adversary." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 105 at 733 (5th ed. 1984). Estoppel does not require that defendant's representation be the sole cause of plaintiff's predicament. It is enough that the representation influenced plaintiff's conduct. As Professor Keeton notes, when a defendant accomplishes his or her goal of deceiving the plaintiff, then it should not matter that the plaintiff is partly at fault for his or her predicament unless his or her conduct is utterly unreasonable. *Id.* at § 108 at 749; *see also Cousineau v. Walker*, 613 P.2d 608, 616 (Alaska 1980) ("A buyer of land, relying on a[ ] ... misrepresentation, is barred from recovery only if the buyer's acts in failing to discover defects were wholly irrational, preposterous, or in bad faith.").

user safety concerns. The aviation industry is the subject of extensive federal regulation as a result of concerns for user safety with the result that Borg–Warner has a duty to disclose defective parts.[10]

In an environment where product safety is regulated and a manufacturer has a duty to reveal a potentially dangerous product defect, the regulatory framework acts to inform the public about such defects. The reports of regulatory agencies convey to the public the representations of manufacturers, both true and false, regarding the safety of products. Once public, information about a product defect serves to alert a victim of an alleged tort about a possible cause of the victim's injury. Under these circumstances, parties may reasonably believe that products are not defective, absent adverse reports from regulatory agencies. In other words, these parties "rely" on an absence of adverse information in concluding that a product is safe.[11]

In the instant case, the Palmer estate alleged that Borg–Warner actively and deceptively cultivated the auto gas theory of causation (use of auto gas as the cause of carburetor failure), while concealing the true cause of carburetor failure from the public, the NTSB and the FAA. Otherwise stated, the Palmer estate alleged that Borg–Warner purposely placed false information in the public domain in order to divert suspicion away from it and onto the pilot of an aircraft for operating on auto gas. The estate further alleged that it did pursue an investigation based upon the information reasonably available to it, including the NTSB report, but that Borg–Warner's false representations "prevent[ed] an investigation [by the estate] from revealing any relevant results." These allegations meet the reliance requirement of the equitable estoppel doctrine.

### 2. *Due Diligence as an Element of Equitable Estoppel.*

Borg–Warner also argues that in a new proceeding the Palmer estate would fail to meet the due diligence requirement of equitable estoppel, relying on the following language: "We have cautioned: 'a plaintiff generally cannot invoke estoppel unless he has exercised due diligence in attempting to uncover the concealed facts.' *Russell,* 743 P.2d at 376." *Mine Safety Appliances Co.,* 756 P.2d at 293.

This language does not create a new factor which must be considered separately from a "discovery rule" analysis. Under our discovery rule, the statute of limitations begins to run when the "claimant discovers, or reasonably [through the exercise of due diligence] should have discovered, the existence of all elements essential to the cause of action.... We look to the date when a reasonable person has enough information to alert that person that he or

---

**10.** We have acknowledged that:

> The settled rule is that the mere failure by a person to disclose a fact concerning a cause of action which arises against him does not suffice to toll the statute [of limitations] unless the defendant owed a duty of disclosure.

*Russell v. Municipality of Anchorage,* 743 P.2d 372, 376 (Alaska 1987). However, government regulations impose upon Borg–Warner a duty of disclosure.

The Congress of the United States has delegated regulatory authority over aircraft safety to the Department of Transportation:

(a) Minimum standards; rules and regulations

The Secretary of Transportation is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time: (1) Such minimum standards governing the design, materials, workmanship, construction, and performance of aircraft, aircraft engines, and propellers as may be required in the interest of safety;

49 U.S.C.A.App. § 1421(a) (West Supp.1991).

Regulations promulgated under this statutory authority require disclosure of defective aircraft parts:

(b) [Regulated parties] shall report any defect in any product, part, or article manufactured by it that has left its quality control system and that it determines could result in any of the occurrences listed in paragraph (c) of this section.

(c) The following occurrences must be reported as provided in paragraphs (a) and (b) of this section:

. . . .

(10) An engine failure.
14 C.F.R. § 21.3 (1991).

**11.** We do not mean to imply by the foregoing that the manufacturer of a product in an unregulated industry also does not have a duty to reveal potentially hazardous defects.

she has a potential cause of action or should begin an inquiry to protect his or her rights." *Id.* at 291 (citations omitted).

 In the context of alleged fraudulent concealment, whether in the form of an action for deceit or in the context of a claim for equitable estoppel, the due diligence requirement involves a determination of when the plaintiff discovered or reasonably should have discovered the fact that evidence of a potential cause of action had been fraudulently concealed.[12] Once a plaintiff discovers or reasonably should discover that evidence has been fraudulently concealed, she risks losing the protection of equitable estoppel unless she takes timely action. *Gudenau & Co., Inc. v. Sweeney Ins., Inc.,* 736 P.2d 763, 769 (Alaska 1987) ("In order to establish a right to equitable estoppel ... [p]laintiff must also show that it resorted to legal action within a reasonable period after the circumstances ceased to justify delay.").[13] The determination of when a fraudulent misrepresentation or concealment should have been discovered is a question of fact for the trial court to decide. However, the standard of conduct imposed on the plaintiff is not the absence of mere negligence. *Carter v. Hoblit,* 755 P.2d 1084, 1087 (Alaska 1988). Where there is an intent to mislead such a standard would be "clearly inconsistent with the general rule that mere negligence of the plaintiff is not a defense to an intentional tort." Keeton, *supra,* § 108 at 750.[14] Thus, a party should be charged with knowledge of the fraudulent misrepresentation or concealment only when it would be utterly unreasonable for the party not to be aware of the deception. We noted the question whether the absence of reasonable diligence should be a defense available to one who has committed a fraud or willful concealment in *Pedersen,* and commented on "the growing trend of courts 'to move toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy.' *Carter v. Hoblit,* 755 P.2d 1084, 1087 (Alaska 1988) (quoting W. Jaeger, *Williston on Contracts,* § 1515B, at 487 (3rd ed. 1970))." *Pedersen v. Zielski,* 822 P.2d 903, 910 n. 9 (Alaska 1991).[15]

12. Borg–Warner argues that the Palmer estate was put on inquiry notice about the carburetor defect by the answer it received in the estate's suit against the pilot. In that action the Swanson estate answered that (a) third parties were responsible for the accident; and (b) the Palmer estate had failed to join indispensable third parties. We do not agree with Borg–Warner's contention. It cannot be said as a matter of law that the estate reasonably should have known of a potential cause of action against Borg–Warner merely because of the Swanson estate's answer. *See Russell v. Municipality of Anchorage,* 743 P.2d 372, 375 (Alaska 1987) (Ordinarily summary judgment on this issue would be inappropriate.).

Moreover, Borg–Warner's argument is misfocused because in this appeal, the critical inquiry is whether the Palmer estate knew or through the exercise of diligence should have known of such concealment prior to entry of summary judgment.

13. In this case the estate filed its suit within two years and nine days after Palmer's widow learned of the accident. This was some sixteen months before Judge Hodges found in the *Swanson* litigation that Borg–Warner had failed to disclose the float problem and is clearly within a reasonable time after the earliest point at which the Palmer estate might be charged with knowledge of the fraud.

14. In *Palmer I* we held that the Palmer estate had not exercised due diligence and that a diligent inquiry would have revealed the elements of the Palmer estate's cause of action against Borg–Warner. *Id.* at 635–36. However, if the Palmer estate is able to show fraud or intentional concealment of material facts on the part of Borg–Warner, the Palmer estate's failure to engage in a reasonable inquiry will be excused.

15. In *Carter* we held that there is no requirement that a fraud victim reasonably inquire in order to be entitled to the benefit of what was in that case a statutory discovery rule. We observed in *Carter* that in actions not involving the statutory discovery rule, reasonable reliance remains an element of estoppel. However, because willful misconduct is qualitatively different from mere negligence, we see no reason why the *Carter* holding should not apply to all statute of limitations cases.

In *Dressel v. Weeks,* 779 P.2d 324, 330 (Alaska 1989), we discussed the rule that a "properly recorded title normally precludes an equitable estoppel against assertion of that title" because it prevents the party seeking to raise the estoppel from arguing that he lacked a reasonable means of discovering the true state of the title. We added, however, that "an equitable estoppel may exist, notwithstanding that the records disclose the actual state of title" where there is

 Based on the analysis above, we conclude that the first element required to set aside a judgment under Rule 60(b)(2) is satisfied. The evidence of fraudulent concealment in conjunction with the doctrine of equitable estoppel would probably change the result in a new proceeding. *See Montgomery Ward,* 394 P.2d at 776.

Because the trial court denied the Palmer estate's Rule 60(b)(2) motion without comment, we must conclude that the court abused its discretion by failing to consider the evidence of fraudulent concealment and the doctrine of equitable estoppel. Therefore, we must remand the case for reconsideration of the Rule 60(b)(2) motion.

## B. DUE DILIGENCE AS A RULE 60(b)(2) REQUIREMENT

If the Rule 60(b)(2) motion is to be granted on remand, the other *Montgomery Ward* elements must be established. Significantly, it must be determined that evidence of Borg–Warner's fraudulent concealment "must have been discovered since the trial" and "must be of such a nature that it could not have been discovered before trial by due diligence." *Montgomery Ward,* 394 P.2d at 776.

While the nature of this inquiry is not distinct from that described above regarding due diligence in the context of the doctrine of equitable estoppel, the relevant time of discovery of the fraudulent concealment is different. Whether the Rule 60(b)(2) motion should be granted depends on a determination of whether the Palmer estate discovered or should have discovered the fraudulent concealment *before trial— in this case, before summary judgment was entered on March 14, 1989.*

"some act of a positive or affirmative quality, which was calculated to produce a wrong impression...." *Id.* at 330 (citations omitted).

16. On remand, should the trial court deny the Palmer estate's 60(b)(2) motion, the estate may have a new cause of action based strictly on fraud. Such an action would require proof of the five elements of the tort action for deceit: (1) a false representation; (2) the defendant knows that the representation is false; (3) the defendant intends to induce the plaintiff to refrain from action; (4) the plaintiff justifiably

 On remand, the trial court is directed to enter findings concerning the existence of fraudulent concealment. If such concealment is found, the court should determine whether the Palmer estate knew or through the exercise of diligence should have known of such concealment prior to entry of summary judgment.[16]

REVERSED and REMANDED for reconsideration of the Palmer estate's Rule 60(b)(2) motion in accordance with this opinion.

relies on the false statement in refraining from taking action; and (5) damage to the plaintiff. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* § 105 at 728 (5th ed. 1984). In this case damage to the plaintiff would be loss of the cause of action for negligence or products liability as a result of the false representation. Thus the suit would require the plaintiff to prove that she had a good case for products liability or negligence but she lost it through the running of the statute of limitations by reason of the fraudulent misrepresentation.