Christopher **WAAGE**, Appellant,

v.

**CUTTER BIOLOGICAL DIVISION OF MILES LABORATORIES, INC., Appellee.**

No. S–6059/6849.

Supreme Court of Alaska.

Nov. 22, 1996.

1345 (Alaska 1994).

Ted Stepovich, Stepovich, Kennelly & Stepovich, Anchorage, for Appellant.

Steven S. Tervooren, Hughes Thorsness Gantz Powell & Brundin, Anchorage, for Appellee.

Before RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

Christopher Waage is a hemophiliac who infused "Koate," a blood-clotting agent manufactured by the Cutter Biological Division of Miles Laboratories, Inc. (Miles). Waage sued Miles in September 1990, alleging that he contracted the AIDS virus from a batch of contaminated Koate he used in 1983. The superior court granted summary judgment in favor of Miles, ruling that the applicable statute of limitations had expired on Waage's claim. We reverse.

## II. FACTS AND PROCEEDINGS

### A. Waage's Lawsuit

In 1983 Kodiak resident Christopher Waage was treating his hemophilia with Koate, a blood coagulant that Miles manufactured from human blood plasma. In October 1983, Miles recalled several lots of Koate containing plasma from a donor who had

been diagnosed with AIDS. Miles' letter to Waage's direct Koate supplier, the Oregon Health Sciences University (OHSU), stated that "there is no evidence these products will transmit [AIDS]." OHSU immediately informed Waage of the recall by a letter which also stated that "[t]here is no indication that anyone who has infused the [Koate] has become ill. We do not recommend any special laboratory tests other than the blood samples which are collected when you come to clinic."[1]

By the time he received OHSU's letter, however, Waage had already used some of the AIDS tainted Koate. As early as 1986 or 1987, Waage began to discuss with family members the subject of his possible HIV positive status and whether he should undergo testing. Waage later stated, "Until the test results came back I was worried about the exposure, ... but believed due to my generally healthy physical condition that I was not infected. The longer time passed the more I was convinced I was not infected." Waage would tell people "that I may have been exposed [to the AIDS virus], and then I would just say, 'but I don't have it.' There's a chance in hell that I have it, you know?"

In October 1987 Waage received a letter from Dr. Lovrien of OHSU that stated, in part:

Regarding the risk of AIDS. I think that what is important is whether you feel well or not. It is most likely that you are probably going to test as AIDS HIV antibody positive since most [of] the fellows with hemophilia your age are positive. However, most of them are not sick and I think this is important to remember that the HIV test is just a laboratory test and does not tell us whether or not you are sick or not.... We will be coming back up there and we can certainly help arrange for you to be tested if you like. Another way is to somehow arrange for you to come down here. At any rate I think it is important to stay in touch and let us try to help you in any way we can.

When Dr. Lovrien came to Kodiak to treat several hemophiliacs, Waage declined testing.

In August 1988, after injuring his knee in a fall, Waage saw Dr. Juergens in Kodiak. He was also suffering from considerable weight loss and night sweats. Juergens informed Waage that she suspected he was HIV positive, and she suggested that he undergo HIV testing.

Waage subsequently travelled to Seattle and on August 10 was examined by Dr. Bush. Dr. Bush noted that Waage's weight loss and feverish symptoms had abated, and concluded that "it is not imperative to proceed with testing at this time although [Waage] may benefit from AZT." Waage nevertheless did undergo testing on September 2, 1988, and tested positive for the HIV virus on September 3 and on September 9, according to two separate tests which were administered. Waage claims that he received the test results in either October or November of 1988.

Waage filed suit against Miles on September 10, 1990, alleging negligence, products liability, and breach of implied warranty.[2]

### B. *Miles Obtains Summary Judgment on Statute of Limitations Grounds*

Prior to trial, Miles moved for summary judgment, arguing that the two-year statute of limitations on Waage's claims had expired before September 7, 1990. Miles argued that undisputed facts showed that before September 1988, Waage knew that he was possibly or even probably HIV positive, and that "discovery of his HIV status could have been quickly and easily accomplished." Miles asserted that more than two years before Waage filed suit, he was in possession of information sufficient to cause a reasonable person to make inquiries to protect his rights, and that had Waage inquired, he would have discovered the elements of his cause of action. In response, Waage argued in part that the statute of limitations should be tolled on the grounds that Miles had

---

1. In regard to OHSU's recommendation concerning testing we note that an HIV-test did not exist until early 1985.

2. Waage originally sued OHSU as well. Waage's claims against OHSU were subsequently dismissed with prejudice.

concealed information about Koate's dangerousness.

■ The superior court granted Miles' summary judgment motion and subsequently denied Waage's Motion for Reconsideration. It concluded that "undisputed facts ... show that Mr. Waage knew or should have known of his cause of action more than two years prior to ... the date on which the Plaintiff commenced suit." Waage appeals from this judgment.[3]

## III. DISCUSSION [4]

The superior court granted summary judgment in favor of Miles based upon its determination that the applicable statute of limitations had run, barring Waage's claim. The applicable statute of limitations for tort claims is two years. AS 09.10.070. In resolving the issues presented in this appeal, it is necessary to examine the related doctrines of equitable estoppel and the discovery rule.[5]

In *Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991), discussing the discovery rule as summarized in our earlier opinion in *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288 (Alaska 1988), we said:

> This is a formulation of the discovery rule that will work for most, but not all cases. Most notably it mentions two ac-

crual dates: (1) the date when plaintiff reasonably should have discovered the existence of all essential elements of the cause of action; and (2) the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights. The dates are different, since the point when the elements of a cause of action are discovered may come after and as a result of a reasonable inquiry. The inquiry, in turn, may be a time consuming process.

In *Mine Safety* and in other cases, we held that the inquiry notice date, rather than the date when the inquiry should have produced knowledge of the elements of the cause of action, was the date from which the statutory period began to run.[6]

Thus, analysis of the superior court's grant of summary judgment to Miles under our usual discovery-inquiry notice formulation requires determination of when Waage had information sufficient to alert a reasonable person to commence an inquiry to protect his or her rights. We believe that point was reached, at the latest, in August of 1988 when Dr. Juergens informed Waage that he was exhibiting symptoms of the AIDS virus and that he should undergo HIV testing. Therefore, if we were to employ a pure dis-

---

**3.** Waage also filed a motion for post-judgment relief. However, because we conclude that the superior court erred in granting Miles' motion for summary judgment, we need not consider Waage's appeal from the superior court's denial of his Civil Rule 60(b) motion.

**4.** In reviewing the superior court's grant of summary judgment, we

> must draw all reasonable inferences in favor of the nonmoving party and may [uphold] summary judgment only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

*Russell v. Municipality of Anchorage*, 743 P.2d 372, 375–76 n. 11 (Alaska 1987) (citation omitted).

**5.** Though we treat equitable estoppel and the discovery rule independently, it is apparent that the two doctrines are intimately linked. As we have previously stated,

> "a plaintiff generally cannot invoke estoppel unless he has exercised due diligence in attempting to uncover the concealed facts." ....
> This language does not create a new factor which must be considered separately from a "discovery rule" analysis.

*Palmer v. Borg–Warner Corp.*, 838 P.2d 1243, 1250 (Alaska 1992) (citations omitted).

**6.** In *Cameron* we further stated that the statute of limitations does not necessarily run from the time that a plaintiff has inquiry notice, but is tolled if "there ha[s] not been a reasonable time to investigate" between the time a plaintiff acquires inquiry notice and the expiration of the statute of limitations. *Cameron*, 822 P.2d at 1366. We also said that *Pedersen v. Zielski*, 822 P.2d 903 (Alaska 1991), when combined with *Palmer v. Borg–Warner Corp.*, 818 P.2d 632 (Alaska 1990),

> added a third part to our discovery rule: where a person makes a reasonable inquiry which does not reveal the elements of the cause of action within the statutory period at a point where there remains a reasonable time within which to file suit, the limitations period is tolled until a reasonable person discovers actual knowledge of, or would again be prompted to inquire into, the cause of action.

*Cameron*, 822 P.2d at 1367.

covery-notice inquiry analysis, we would affirm the superior court's grant of summary judgment on this basis, since Waage did not commence suit against Miles until September 10, 1990.

■■■■ This conclusion, however, does not end our examination of the merits of this appeal. A different discovery rule applies where equitable estoppel has been advanced as a defense to the statute of limitations. In order to establish equitable estoppel, "a plaintiff must produce evidence of fraudulent conduct upon which it reasonably relied when forebearing from the suit." *Pedersen v. Zielski*, 822 P.2d 903, 908–09 (Alaska 1991), quoting *Gudenau & Co., Inc. v. Sweeney Ins., Inc.*, 736 P.2d 763, 769 (Alaska 1987). The fraudulent conduct may be either an affirmative misrepresentation, or a failure to disclose facts where there is a duty to do so. *Id.* at 909.[7]

When equitable estoppel does apply in the context of alleged fraudulent concealment, we have stated:

> In the context of alleged fraudulent concealment, whether in the form of an action for deceit or in the context of a claim for equitable estoppel, the due diligence requirement involves a determination of when the plaintiff discovered or reasonably should have discovered the fact that evidence of a potential cause of action had been fraudulently concealed. Once a plaintiff discovers or reasonably should discover that evidence has been fraudulently concealed, she risks losing the protection of equitable estoppel unless she takes timely action.... The determination of when a fraudulent misrepresentation or concealment should have been dis-

covered is a question of fact for the trial court to decide. However, the standard imposed on the plaintiff is not the absence of mere negligence.... Where there is an intent to mislead such a standard would be "clearly inconsistent with the general rule that mere negligence of the plaintiff is not a defense to an intentional tort." ... *Thus, a party should be charged with knowledge of the fraudulent misrepresentation or concealment only when it would be utterly unreasonable for the party not to be aware of the deception.*

*Palmer,* 838 P.2d at 1251 (footnote and citations omitted) (emphasis added).[8]

The superior court did not articulate the basis for its conclusion that the statute of limitations had run. However, by virtue of the fact that it granted Miles' motion for summary judgment, the superior court most likely determined either that equitable estoppel did not apply, or that equitable estoppel did apply but that Waage failed to satisfy the "utterly unreasonable" inquiry notice standard for statute of limitations computations in the context of alleged fraudulent concealment. However, we conclude that there are genuine issues of material fact both as to whether equitable estoppel is applicable, and whether Waage's suit against Miles was untimely under the "utterly unreasonable" inquiry notice standard.

### A. Fraudulent Concealment—Equitable Estoppel

■■■■ Waage alleges that Miles fraudulently misrepresented and concealed the relationship between HIV positive status and AIDS as well as the relationship between Koate and AIDS.[9] The record contains evidence indicating that, in December 1982,

---

7. Thus, when a "plaintiff's delay in bringing suit was occasioned by reliance on the false or fraudulent representation" of a defendant, equitable estoppel is proper to prevent the defendant from claiming the statute of limitations as a defense. *Palmer,* 838 P.2d at 1247. The elements of a fraudulent concealment and equitable estoppel claim are a fraudulent concealment, justifiable reliance, and damage.

8. Waage did not specifically argue the "utterly unreasonable" standard to the superior court in opposition to Miles' summary judgment motion. However, Waage did mention equitable estoppel,

and also specifically noted that, when the doctrine applies, "Miles cannot now rely on the negligence of the plaintiff in failing to discover all the elements of his cause of action."

9. *As to the former, the problem with Miles' assertions is that Miles stated affirmatively that if a person tested positive for HIV, the person would not necessarily develop AIDS. This could be considered a misrepresentation if Miles knew or should have known that it was scientifically unknown whether all those with HIV would get AIDS, and nonetheless represented that not all with HIV will get AIDS as if this were a known*

Miles knew of potential AIDS danger from blood products such as Koate.[10] Additionally, there is evidence that Miles minimized the risk of AIDS in its dealings with treatment personnel and the public.[11] Considering this evidence, we hold that there is more than sufficient evidence to raise genuine issues of material fact as to whether Miles fraudulently misrepresented and concealed the relationship between HIV positive status and AIDS, as well as the relationship between Koate and AIDS.[12]

fact. Stating or implying that you have knowledge when you are aware that you don't have this knowledge constitutes misrepresentation. This type of misrepresentation is, of course, directly related to the statute of limitations issue, since such misrepresentation would have a natural tendency to deter litigation. In other words, those who have HIV, but not AIDS, would have little incentive to sue because they hope and believe there is a good chance that they never will be damaged.

10. A December 3, 1982 letter from the Centers for Disease Control (CDC) to a Miles employee included a report stating, "continuing reports of AIDS among persons with hemophilia A(7) raise serious questions about the possible transmission of AIDS through blood and blood products." A December 13, 1982 internal Miles memorandum stated, "[a]lthough the transmission of AIDS via blood products (and specifically AHF) has not been conclusively demonstrated, there is some evidence that a possibility does exist." A December 21, 1982 memorandum established a "course of action" to address the problem. A December 29, 1982 memorandum recommended warning customers about AIDS and warned that "litigation is inevitable." A January 5, 1983 internal memorandum summarized a hospital meeting including the following question from the audience and response from a CDC doctor: "Q: Does taking concentrates transmit AIDS? A: Dr. Auerbach: Presumably yes...." In January 1983, an employee of Miles attended a meeting and recorded in his notes that a representative from the CDC in Atlanta was "convinced [that AIDS] is transmitted as an agent thru [sic] sexual acts and blood and blood products." A January 27, 1983 memorandum stated that one of Miles' plasma donors was suspected of having AIDS. A February 10, 1983 memorandum noted that six hemophiliacs had died of AIDS, about fourteen had the disease, and about ten were "listed as 'suspected.'" A February 17, 1983 letter from Miles to its blood plasma centers answered questions such as "[w]hy are we screening our donors for AIDS?" by stating, "[b]ecause it has been reported that eight or more hemophiliacs have contracted AIDS. The evidence suggests that blood or blood products they have used may have been involved in the transmission of the

### B.  *Reasonable Reliance*

█ In order to prove equitable estoppel to prevent Miles from claiming the two-year statute of limitations as a defense, Waage must also show reasonable reliance on Miles' alleged misrepresentation or concealment. We have not required extensive pleading of facts demonstrating reliance on the fraudulent concealment or misrepresentation. *Palmer*, 838 P.2d at 1249. Waage asserts that he "relied on the misinformation provided by Miles and/or Miles' failure to provide

disease." An enclosed poster for display at the plasma centers stated that "ACQUIRED IMMUNE DEFICIENCY SYNDROME (AIDS) is a disease that may be transmissible through plasma products."

11. In this regard, the following is relevant: An October 1983 letter to treatment centers accompanying recall said in part, "there is no evidence that these products will transmit the disease [AIDS]." Though Waage does not assert that he ever saw this letter, he argues that Dr. Lovrien (a doctor at the treatment center) relied on the information he received from Miles when he wrote the following letter to Waage:

The cause of AIDS is not known, but if the disorder is caused by a virus-like substance, it seems wise to prevent exposure to plasma donated by AIDS patients. Many hemophilia patients have been infused with the Koate which you have used. There is no indication that anyone who has infused the medicine has become ill. We do not recommend any special laboratory tests.... If we receive further information from the Cutter Company ... we will send any important notices to you.

12. It is not necessary for Waage to show that Miles distributed false information; it is sufficient if the proof shows that Miles failed to fulfill a duty it had to distribute information. In such cases, as we explained in *Palmer*, "parties 'rely' on an absence of adverse information...." *Palmer*, 838 P.2d at 1250. The rule governing failure to disclose is "mere failure by a person to disclose a fact concerning a cause of action which arises against him does not suffice to toll the statute unless the defendant owed a duty of disclosure." *Russell v. Municipality of Anchorage*, 743 P.2d 372, 376 (Alaska 1987). *Palmer* explains that this duty may arise from governmental regulations. *Palmer*, 838 P.2d at 1250 n. 10. Waage argues that federal regulations which impose a duty to warn of potential safety hazards in drugs by labeling, serve to create a duty on the part of Miles. Here Waage's showing that Miles knew more about the hazards of Koate and the connection between HIV and AIDS than it disclosed raises genuine issues of material facts as to Miles' alleged fraudulent concealment.

accurate information." Waage supports this assertion with evidence that Dr. Lovrien's November 3, 1983 letter to him was based on information from Miles, and that the letter minimized the risk of AIDS from Koate and recommended no additional testing (indeed, the HIV test was unavailable then). We conclude that this evidence is sufficient to raise a genuine issue of material fact as to whether Waage reasonably relied on Miles' alleged concealments and misrepresentations.[13]

## C. Due Diligence

■ In regard to the defense of equitable estoppel against a statute of limitations defense,

> [w]e have cautioned: "a plaintiff generally cannot invoke estoppel unless he has exercised due diligence in attempting to uncover the concealed facts."

*Palmer,* 838 P.2d at 1250. *Palmer* explains, "In the context of alleged fraudulent concealment ... in the context of a claim for equitable estoppel, the due diligence requirement includes a determination of when the plaintiff discovered or reasonably should have discovered the fact that evidence of a potential cause of action had been fraudulently concealed." *Id.* at 1251. Here there are genuine issues of material fact as to when Waage should have realized (1) that there was a sufficiently significant link between Koate and AIDS to warrant an HIV test and (2) that HIV positive status was a reasonable indicator of AIDS. As noted above in *Palmer,* we explained that the standard applicable to Waage would be more than "an absence of mere negligence." *Id.* Rather, Waage would be *"charged with knowledge of the fraudulent misrepresentation or concealment only when it would be utterly unreasonable for the party not to be aware of the deception."* *Id.* (emphasis added). Thus, only if it were "utterly unreasonable" for

Waage to rely on the information and lack of information dispensed by Miles would Waage be charged with inquiry notice.

In our view there remain genuine issues of material fact as to the date when Waage should be charged with inquiry notice (i.e., when it would be "utterly unreasonable" for a person in Waage's position not to be aware of the deception) of the risks of AIDS from infusion of Miles' Koate and the relationship between HIV positive status and AIDS. Our reasons for this conclusion are as follows.[14]

### 1. HIV Antibody Test

Miles argues that Waage could have discovered his injury by means of a test on October 1, 1987, which was the date that Dr. Lovrien advised Waage that he would probably test positive for the HIV antibody. Waage responds that, because scientific knowledge prevalent during the 1980s held that an HIV positive test result did not conclusively indicate the presence of active AIDS viruses or an AIDS injury, he would not necessarily have discovered the elements of his cause of action prior to September 1988 even if he could have determined his HIV status earlier.

Waage did not make this argument to the superior court in opposition to Miles' summary judgment motion. Nevertheless, it is appropriate that we consider it on appeal. For example, in *Drake v. Hosley,* 713 P.2d 1203 (Alaska 1986), we stated:

> It remains the duty of the trial court to determine whether the record presents any factual issues which would preclude the entry of summary judgment as a matter of law.... Here, the trial court record included affidavits which clearly showed the factual dispute. Since the factual dispute was fairly presented to the trial court,

---

**13.** Waage will have to show that because of Miles' failure to disseminate information about the dangers of Koate and AIDS, he was unaware that he was injured and, as a result, did not undergo an HIV test.

**14.** Miles' brief does not address the "utterly unreasonable" standard. Rather, Miles' arguments

proceed from the assumption that the regular discovery standard applies in cases of equitable estoppel, stating, "[o]nce a plaintiff discovers or reasonably should have discovered that evidence has been fraudulently concealed, the plaintiff risks losing the protection of equitable estoppel unless he takes timely action."

the issue may be raised on appeal.[ 15]

*Id.* at 1206–07, n. 2 (citations omitted).

This same reasoning applies here. Waage presented to the superior court a letter from Dr. Lovrien to Waage, written in July of 1987, stating in part, "I think this is important to remeber [sic] that the HIV test is just a laboratory test and does not tell us whether or not you are sick or not." Thus since the issue was fairly presented to the superior court, we consider it here on appeal.

Today it is generally believed that a person who tests positive for HIV has contracted the AIDS virus, which is active in the person's body, and which will presumably lead to the development of full-blown AIDS. However, the passage of Dr. Lovrien's letter quoted above indicates that, in the mid-to-late 1980s, it was believed that a person who tested positive for the HIV virus might have antibodies from the AIDS virus, which would register during the test, but that such a person would not necessarily develop a disease.[16]

We hold that Dr. Lovrien's letter to Waage raises a genuine issue of material fact as to whether it was "utterly unreasonable" for Waage to remain ignorant of the deception (i.e., the connection between Koate and AIDS) prior to September 10, 1988. Given the uncertainty in the state of medical knowledge in the mid-to-late 1980s, there is a factual dispute as to whether Waage could justifiably have remained ignorant of his injury even if he had tested positive for the antibody. Therefore, the superior court erred in concluding that no genuine issue of material fact existed as to the issue.[17]

### 2. *Other Possible Indicators of AIDS*
#### a. *Physical Symptoms*

Miles also asserts that Waage should have been on inquiry notice due to his alleged awareness of AIDS related symptoms. Miles suggests that Waage's symptoms should have put him on notice on several dates prior to September 10, 1988. Using the "utterly unreasonable" standard, we believe that genuine issues of material fact exist as to whether Waage should have had inquiry notice prior to that date.

Miles argues that Waage should have been on notice in August 1988, when he developed a fever, had night sweats, and lost some weight. However, under the "utterly unreasonable" standard, we cannot say that such symptoms should have alerted Waage to the fact that he was suffering from complications of AIDS. Although these symptoms may be consistent with AIDS, we cannot conclude that it would have been "utterly unreasonable" for Waage to have attributed them to some other cause. Additionally, it is not clear from a review of the record if any physician told Waage that his symptoms were related to AIDS.[18] Therefore, there is

---

**15.** *See also American Restaurant Group v. Clark,* 889 P.2d 595, 598 (Alaska 1995).

**16.** We note in passing that other jurisdictions have considered this issue. *See Doe v. American Red Cross,* 128 Or.App. 38, 874 P.2d 828, 833 (1994) ("the correlation between HIV and AIDS, as they were understood in 1988, was not nearly as strong as it is today"), *aff'd on other grounds,* 322 Or. 502, 910 P.2d 364; *New v. Armour Pharm. Co.,* 58 F.3d 445, 450 (9th Cir.1995) (applying California statute of limitations, finding that "[i]n 1988, [plaintiff who tested positive for HIV] could not have known that he surely would get AIDS"); *Seitzinger v. American Red Cross,* Nos. 90–0046 and 90–3890, 1991 WL 88023 *5 (E.D.Pa. May 21, 1991) ("Although it is presently known that HIV infection ... ultimately causes the death of many persons so infected, this was not the state of knowledge during 1984 through 1988. Instead, during this time period, over ninety percent of infected persons were thought to be immune to the virus.").

**17.** Miles also asserts that the statute of limitations should have begun to run in early August 1988, when Dr. Juergens told Waage that she suspected he was HIV positive, and suggested that Waage undergo HIV testing. Miles argues that Waage's "personal decision not to conduct [an] inquiry" until the following month "did not serve to further delay commencement of the limitations period." We disagree. There is a genuine question of material fact as to whether the consultation made it "utterly unreasonable" for him to remain ignorant of the deception.

**18.** Though the parties do not discuss it at any length, Dr. Bush wrote in his notes that Waage "may benefit from AZT." AZT, of course, is a drug commonly used to combat the AIDS virus. The fact that Dr. Bush favored AZT treatment implies that he believed that Waage had the AIDS virus as of August 10, 1988. However, again, the record is unclear as to whether Dr. Bush actually communicated to Waage his belief that Waage would benefit from AZT or why he

a genuine issue of material fact as to whether Waage should have known that his symptoms were even consistent with AIDS when he was examined by doctors in 1988.

### b. *Thoughts of Litigation*

Miles also asserts that because Waage admitted in a deposition that he had considered litigation prior to September 1988, Waage knew prior to September 1988 that he had AIDS. However, Waage's deposition is unclear as to whether he had considered litigation because he knew he harbored active HIV, or alternately because he thought there was merely a risk that he was, or had been, infected. Given the "utterly unreasonable" standard, there is a genuine issue of material fact as to whether Waage's testimony indicates that he knew he had AIDS prior to September 1988.[19]

### c. *Discussions of Family Members*

Finally, Miles asserts that members of Waage's family suspected that Waage had AIDS prior to September 1988. However, some of the discussions which Miles refers to only concern whether Waage should have been tested for HIV antibodies. As we have observed, we cannot say that such testing would have given Waage knowledge of his injury due to the question of the state of knowledge in the mid-to-late 1980s. Similarly, his family's supposition that Waage would

test positive for HIV antibodies does not speak to the question of what knowledge testing positive would have given Waage. Also, while Waage's family members suspected that his symptoms were related to AIDS, as we have discussed, it was not necessarily clear at the time that they were AIDS related symptoms.

Thus, given the "utterly unreasonable" standard, we hold that there are genuine issues of material fact as to whether Waage had sufficient knowledge for the two-year statute of limitations to begin running prior to September 10, 1988.

## IV. *CONCLUSION*

We REVERSE the grant of summary judgment, and REMAND this case for further proceedings not inconsistent with this opinion.[20]

MOORE, C.J., and EASTAUGH, J., not participating.

thought so. Therefore, we cannot definitively state that Waage had inquiry notice as of August 10, 1988. That is, there is an issue of material fact regarding even the August 10 consultation with Dr. Bush.

**19.** In his deposition Waage stated that "everyone's saying, 'you look like you've got AIDS, man' 'cause I was so skinny, and my pants were falling—literally falling off of me, 'cause I was so skinny." Regarding this testimony, we note that there is no mention of it in Miles' briefs. Additionally, we do not think that this testimony, even when taken in conjunction with the other evidence discussed above, makes it "utterly unreasonable" for Waage not to have discovered his injury. These comments apparently were made by laypersons without medical knowledge of the symptoms of AIDS. Moreover, the comments were apparently prompted by Waage's slight weight. Waage testified that, at some point, he had suffered a knee injury which made it difficult for him to eat. In light of this evidence, if the

comments were made at approximately the same time as Waage's knee injury, it may have been reasonable for Waage to disregard the comments to the effect that his weight made him appear to have AIDS. Finally, we note that it is unclear when these comments were made. Waage's testimony indicates that, due to the comments, he left Kodiak but does not specify when he departed. Therefore this portion of Waage's deposition testimony does not alter our conclusion that there exists a genuine issue of material fact under the "utterly unreasonable" standard as to whether or not Waage knew he had AIDS prior to September 1988.

**20.** Our disposition makes it unnecessary to address any other issues in this appeal.

Although this appeal was recently dismissed by this court pursuant to a stipulation of the parties, we have decided to publish this opinion given the significance to the public, bench, and bar of the discovery and statute of limitations issues raised by this appeal.